STATE OF NORTH CAROLINA v. EDWARD HOLDEN

No. 61

(Filed 28 January 1972)

1. Criminal Law § 99— expression of opinion by trial judge

G.S. 1-180 prohibits any opinion or intimation of the trial judge at any time during the trial which is calculated to prejudice the parties in the eyes of the jury.

2. Criminal Law § 99— remarks of court which belittle counsel

Remarks from the bench which tend to belittle and humiliate counsel, or which suggest that counsel is not acting in good faith, reflect not only on counsel but on the defendant as well and may cause the jury to disbelieve all evidence adduced in defendant's behalf.

3. Criminal Law §§ 99, 170— remarks of trial court — harmless error

In this homicide prosecution, defense counsel asked a State's witness on cross-examination, "Don't you know a knife was found on the foot of this bed when they were cleaning up there?", whereupon the trial court commented, "Now are you going to put on evidence to that effect or are you just making that up to ask the question," and thereafter told counsel, "Well, ask proper questions then." *Held:* Although the trial court's remarks were improper, they constituted harmless error where the evidence would support a conviction of second degree murder, defendant offered no evidence in explanation or mitigation, and defendant was only convicted of manslaughter.

ON *certiorari* to review judgment of *Bailey, J.,* at 3 September 1969 Regular Criminal Session, WAKE Superior Court.

Defendant was charged in a bill of indictment with the first degree murder of Howard Carroll on 20 July 1969. When the case was called for trial, the solicitor announced the State would not seek a verdict of murder in the first degree but would ask for a verdict of murder in the second degree or manslaughter as the jury may find. The defendant entered a plea of not guilty.

Evidence for the State consisted of the testimony of Emma Carroll, wife of the deceased, and Mary Helen Jones, sister of the deceased. The defendant offered no evidence.

The State's evidence tends to show that on the morning of 20 July 1969 Howard Carroll went to the home of defendant Edward Holden to get a drink and returned a short time later with a half-gallon jar of home brew which he placed in the refrigerator. Around noon Mary Helen Jones came to the Carroll home and defendant arrived shortly thereafter. Emma Carroll was not feeling well and defendant agreed to take her to the doctor. They all got in defendant's pickup truck and, finding the doctor's office closed, took Emma to the Wendell-Zebulon Hospital. During the trip Howard Carroll was "playing" with a pocketknife which he rubbed against his sister Mary Helen Jones and pointed at the defendant. He was "playing with the knife and both of them was playing going all the way down there."

When they arrived at the hospital, defendant asked Mary Helen to keep a pistol for him, and she put it in her pocketbook. Emma Carroll was checked by a nurse at the hospital and released. They returned to the Carroll home, arriving about 5:30 in the afternoon, and Mary Helen Jones returned defendant's pistol to him at that time. Shortly after defendant entered the house he asked for the "jar" and sat on the couch drinking from it. Thereafter, there was a conversation about food. The Carroll children had eaten all the food, and defendant Holden said, "Go with me home and eat," and Howard Carroll replied, "He didn't have to go with him home, that he had something to eat there." Emma Carroll said she would fix something to eat. At that time her husband Howard Carroll spoke and said, "I'm bad," and defendant said, "Well I am bad too." Emma was lying on the bed, and "then Howard walked over there on the side of the bed

where I was" and—"All I know a shot fired. Holden fired it."
Mary Helen Jones was in the bathroom when she heard the
shot and heard Emma say, "Don't do that." She rushed out in
time to see defendant again aim the pistol at deceased. Defend-
ant fired again, and Howard Carroll died on the floor about
ten minutes later as a result of gunshot wounds inflicted by
defendant. Mary Helen Jones saw no weapon in her brother's
hand. Both defendant and deceased had been drinking but
neither appeared to be drunk.

The next day Emma Carroll's brother gave her a knife.
He said he got the knife "out of the foot of the car, the back seat
of the car." Emma testified that it was her husband's knife but
stated that he had nothing in his hands when he left the house
after the shooting.

Mary Helen Jones testified that defendant and deceased
were good friends—"Always acted like brothers, went around
together and all, but I ain't never known them to have no such
stuff as they had that Sunday. I don't know why he shot him."

The jury convicted defendant of manslaughter, and he was
sentenced to twenty years in prison. Defendant gave notice of
appeal but failed to perfect his appeal within time. Thereafter,
upon a finding of indigency, Clarence M. Kirk was appointed to
perfect the appeal and petitioned for certiorari to bring up the
late appeal. Certiorari was allowed by the Court of Appeals, and
the case was transferred to the Supreme Court for initial re-
view under the Court's general order entered on 31 July 1970
pursuant to G.S. 7A-31(b)(4).

*Clarence M. Kirk, Attorney for defendant appellant.*

*Robert Morgan, Attorney General, and Edward L. Eatman,
Jr., Staff Attorney, for the State of North Carolina.*

HUSKINS, Justice.

Mary Helen Jones stated on cross-examination that, al-
though deceased had a knife on the trip to the hospital, he put
it in his pocket and did not have a knife in his hand immediate-
ly after defendant shot him. "If he had a knife quick as he
fell out, he'd had that knife in his hand or lying in the bed
or somewhere close around him." This statement evoked the
following exchange:

"Q. [by defense counsel] Don't you know a knife was found on the foot of this bed when they were cleaning up there?

"A. Nobody hadn't seen it.

"COURT: Now are you going to put on evidence to that effect or are you just making that up to ask the question?

"MR. KIRK [defense counsel]: Well, we have got some—

"COURT: Are you going to put on evidence to that effect?

"MR. KIRK: —on it, your Honor.

"COURT: Well, ask proper questions then."

Defendant argues the foregoing comments by the trial judge unmistakably indicated to the jury that defendant's contention about the knife was a fabrication unworthy of belief, amounted to an expression of opinion on the evidence, and was highly prejudicial. This constitutes defendant's first assignment of error.

[1, 2]   The duty of absolute impartiality is imposed on the trial judge by G.S. 1-180. *Nowell v. Neal*, 249 N.C. 516, 107 S.E. 2d 107 (1959). The statute has been construed to prohibit any opinion or intimation of the judge at any time during the trial which is calculated to prejudice the parties in the eyes of the jury. *State v. Douglas*, 268 N.C. 267, 150 S.E. 2d 412 (1966). The respective functions of the judge and jury in criminal trials are clearly demarcated by G.S. 1-180; and by that demarcation the trial judge is denied the right, *in any manner or in any form*, to invade the province of the jury. *Everette v. Lumber Co.*, 250 N.C. 688, 110 S.E. 2d 288 (1959); *In re Will of Holcomb*, 244 N.C. 391, 93 S.E. 2d 454 (1956); *State v. Owenby*, 226 N.C. 521, 39 S.E. 2d 378 (1946). Jurors respect the judge and are easily influenced by suggestions, whether intentional or otherwise, emanating from the bench. Consequently, the judge "must abstain from conduct or language which tends to discredit or prejudice the accused or his cause with the jury." *State v. Carter*, 233 N.C. 581, 65 S.E. 2d 9 (1951). Furthermore, remarks from the bench which tend to belittle and humiliate counsel, or which suggest that counsel is not acting in good faith, reflect not only on counsel but on the defendant as well and may cause the jury to disbelieve all evidence adduced in defendant's behalf. "Any remark of the presiding judge, made in the presence

of the jury, which has a tendency to prejudice the jury against the unsuccessful party is ground for a new trial." *Homes, Inc. v. Holt,* 266 N.C. 467, 146 S.E. 2d 434 (1966). *See* Annotation, Remarks or acts of trial judge criticizing, rebuking, or punishing defense counsel in criminal case, as requiring new trial or reversal, 62 A.L.R. 2d 166 (1958) ; Annotation, Prejudicial effect of remarks of trial judge criticizing counsel in civil case, 94 A.L.R. 2d 826 (1964) ; *State v. Frazier,* 278 N.C. 458, 180 S.E. 2d 128 (1971).

[3] The judge's critical remarks were indiscreet and improper and should not have been made. In a different setting they could be prejudicial so as to require a new trial. Here, however, in light of the evidence and considering the totality of circumstances, we hold that the comments from the bench of which defendant complains constituted harmless error. Not every ill-advised expression by the trial judge is of such harmful effect as to require a reversal. The objectionable language must be viewed in light of all the facts and circumstances, "and unless it is apparent that such infraction of the rules might reasonably have had a prejudicial effect on the result of the trial, the error will be considered harmless." *State v. Perry,* 231 N.C. 467, 57 S.E. 2d 774 (1950) ; *State v. Hoover,* 252 N.C. 133, 113 S.E. 2d 281 (1960).

The facts and attendant circumstances in this case reveal a senseless killing, apparently without the slightest provocation. The evidence would support a conviction of murder in the second degree. Defendant offered no evidence in explanation or mitigation. There is nothing, save defense counsel's question which evoked the trial judge's ill-advised rejoinder, that the deceased was threatening defendant with a knife, or in any other manner, at the time and place the fatal shots were fired. Even so, defendant was only convicted of manslaughter. In this setting it is apparent that the words of the judge here under attack had no prejudicial effect on the result of the trial and must therefore be considered harmless. Unless it appears "with ordinary certainty that the rights of the prisoner have been in some way prejudiced by the remarks or conduct of the court, it cannot be treated as error." *State v. Browning,* 78 N.C. 555 (1877). *Accord, State v. Brinson,* 277 N.C. 286, 177 S.E. 2d 398 (1970) ; *State v. Swaney,* 277 N.C. 602, 178 S.E. 2d 399 (1971). On this record, there is no reason to believe that

another trial would produce a different result more favorable to defendant. This assignment is overruled.

The matters complained of in defendant's remaining assignments of error are without significance and had no effect on the result of the trial. Further treatment of them is not required, and we overrule them without discussion.

Defendant having failed to show prejudicial error, the verdict and judgment will be upheld.

No error.