State v. Majors

Affirmed in part, vacated and remanded for trial in part.

Judges BECTON and COZORT concur.

STATE OF NORTH CAROLINA v. ANN MAJORS

No. 8412SC335

(Filed 19 February 1985)

**Criminal Law § 99.5— judge's comments prejudicial—prejudice not cured**

Comments made by the trial court were inherently prejudicial and the resulting taint was not dissipated by curative instructions where, during the *voir dire* of the jury, at a bench conference requested by the State regarding the composition of the jury at that time, the trial court said to defense counsel that the court did not know "what the hell [defense counsel] was doing" or "what the hell was going on with this case."

Judge MARTIN dissenting.

APPEAL by defendant from *Samuel E. Britt, Judge.* Judgment entered 30 November 1983 in Superior Court, CUMBERLAND County. Heard in the Court of Appeals 9 January 1985.

*Attorney General Edmisten, by Assistant Attorney General George W. Boylan, for the State.*

*Assistant Public Defender Gregory A. Weeks, for defendant appellant.*

BECTON, Judge.

Defendant, Ann Majors, was convicted of second degree murder in the stabbing death of her live-in boyfriend, William Corbett, who, just hours prior to his death, had left the defendant and had taken with him certain items of furniture and stereo equipment from their joint home.

Defendant brings forward four assignments of error, two of which deal with the trial court's comments, heard by two members of the jury panel, that defense counsel "had excused five whites" from the jury panel and that "the court did not know what in the hell [defense counsel] was doing" or "what in the hell

was going on with this case." Defendant first argues that the trial court's comments were prejudicial, entitling her to a new trial. The defendant next argues that the trial court erred in denying her motions for a mistrial, to continue, or for the trial judge to recuse himself based on the comments made. Believing the comments to be reversibly prejudicial, we grant a new trial. We therefore need not reach defendant's two remaining assignments of error.

I

We postulate at the outset that some comments by trial judges are inherently prejudicial; that some comments are so prejudicial that not even curative instructions can right the wrong. That explains in part why mistrials are sometimes granted in the face of complete and accurate instructions to the jury, including curative instructions. And, using common sense as a measuring stick, we have not waited for trial judges to commit the obvious and gross indiscretion of telling the jury in explicit terms how they feel. Recognizing the effect of innuendo and nuances, our inquiry has centered not so much on what exactly was said, but rather on the probable effect of the comments on the jury. *State v. Staley*, 292 N.C. 160, 232 S.E. 2d 680 (1977).

It is not surprising, then, that our courts have been "consistently vigilant to protect the right of every criminal defendant to the assistance of counsel at a trial 'before an impartial judge and an unprejudiced jury in an atmosphere of *judicial calm.*'" *Id.* at 161, 232 S.E. 2d at 681 (quoting *State v. Carter*, 233 N.C. 581, 583, 65 S.E. 2d 9, 10 (1951) (emphasis added). And we have done so with the strongest of language. In *State v. Smith*, 240 N.C. 99, 81 S.E. 2d 263 (1954), our Supreme Court forbade "the expression of any opinion *or even an intimation* by the judge, at any time during the course of the trial, which might be calculated to prejudice either party." 240 N.C. at 101, 81 S.E. 2d at 265. (Emphasis added.) In *State v. Staley*, we find these words: "Any expression as to the merits of the case, or any intimation of contempt for a party or for counsel may be highly deleterious to that party's position in the eyes of the jury." 292 N.C. at 162, 232 S.E. 2d at 682. In *State v. Holden*, 280 N.C. 426, 185 S.E. 2d 889 (1972), our Supreme Court said: "[R]emarks from the bench which tend to belittle and humiliate counsel, or which suggest that counsel is not

---

State v. Majors

---

acting in good faith, reflect not only on counsel but on the defend-ant as well and may cause a jury to disbelieve all evidence ad-duced in defendant's behalf." 280 N.C. at 429, 185 S.E. 2d at 892.

## II

With these expressions as our benchmark, we turn our atten-tion to the trial judge's comments and the context in which they were made. Prior to the selection of the jury, the trial judge denied defendant's motion requesting that the court prohibit the district attorney from exercising peremptory challenges against prospective black jurors solely on the basis of race, or a "group bias." The trial court also denied defendant's motion requesting that the court reporter note the race of prospective jurors who were examined; the trial court did, however, allow defense counsel to ask the race of those jurors challenged peremptorily by the district attorney in order to preserve the issue of "group bias" by the State. The trial judge then gratuitously added: "I suppose, if you carried it to its logical conclusion, the State would be filing a motion wherein you have got a black defendant peremptorily challenging white persons. It don't make sense. You carry this race thing to an illogical conclusion."

During the *voir dire* of the jury, at a bench conference re-quested by the State regarding the composition of the jury at that time, the trial court said to defense counsel that the court did not know "what the hell [defense counsel] was doing" or "what the hell was going on with this case." The trial judge ad-mitted making these remarks upon defendant's motion for a mistrial, or, in the alternative her motion for continuance and recusation, but the judge found as a fact that the remarks were not heard by the jury. Defense counsel was thereafter granted permission to inquire as to what, if anything, had been heard by the jurors. Juror Tew replied: "I heard him say that you dis-missed five whites. I also heard him say that he didn't know what the hell you were doing." Juror Spriggs heard the court say: "He didn't know what the hell was going on or, you know, that's all I heard." Thereafter, the trial judge inquired of Jurors Spriggs and Tew:

Now, the two jurors that have indicated, in any way does that affect your ability to decide this case fairly? Is there anything that I have said that has prejudiced you one way or

> another against the State or the defendant? I'll ask the lady
> first.
>
> Ms. Spriggs: Not me.
>
> Court: You, sir?
>
> Mr. Tew: No, sir.

Thereafter the court inquired of the remaining jurors:

> Court: Asking the rest of the jurors, having found out what
> was said and heard these two jurors say what they heard, is
> there any other juror in any respect prejudice and feel they
> cannot in any respect be fair and impartial to both the State
> and the Defendant in this case? If so, please indicate it.
>
> The record will reflect that all jurors are sitting without giv-
> ing any indication to the Court that they have been preju-
> diced.

It would have been unquestionably better for the trial judge to
have addressed each juror individually. Nevertheless, we assume,
*arguendo*, that all jurors would have said no, if the question had
been asked them individually, although psychologists and some
lawyers know, as H. Bodin has noted, it is more difficult to speak
a lie than to suppress the truth by remaining silent to a group
question. *See* H. Bodin, *Selecting a Jury, in Civil Litigation and
Trial Techniques* (1976).

And, it is not without significance that the trial judge said he
did not know what was going on when, in fact, the pretrial ex-
change between the trial judge and defense counsel suggests that
the trial judge knew exactly what was going on. In our view, the
statement directed to defense counsel, at a time when the District
Attorney had asked to approach the bench, tended to belittle and
humiliate defense counsel before the jury. "The strength of the
attorney's role as advocate is crucial to the success of our judicial
system: his duty vigorously to represent his client requires him
'to present everything admissible that favors his client and to
scrutinize by cross-examination everything unfavorable.'" *State
v. Staley*, 292 N.C. at 161, 232 S.E. 2d at 682 (quoting Annot., 62
A.L.R. 2d 166, 237 (1958)). Therefore, comments tending to reflect
on the competency of counsel "may be highly deleterious" to de-

fendant's case. *State v. Staley.* Again, "[t]he effect on the jury of the remark and not the judge's motive in making it, is determinative." *Id.* at 165, 232 S.E. 2d at 684. And, would there even be room for argument had the trial judge said to defense counsel, "You're incompetent?"

We believe the comments made in this case were inherently prejudicial and that the resulting taint was not dissipated by the curative instructions. *Compare Zebouni v. United States,* 226 F. 2d 826 (5th Cir. (1955)) (defendant denied fair trial because judge described an objection made by his attorney as "foolish" even though the jury had been admonished to disregard the remark), and *McAlister v. State,* 206 Ark. 998, 178 S.W. 2d 67 (1944) (new trial granted when trial judge said it would be "silly" to grant a motion made by defendant's attorney and that he was not going to put up with any more of "this foolishness").

We emphasize that this is not a case in which the trial judge failed to see the relevance of certain evidence, or even defendant's trial strategy. *See, e.g., State v. Robinson,* 279 N.C. 495, 183 S.E. 2d 650 (1971), *cert. denied,* 405 U.S. 1017, --- L.Ed. 2d ---, --- S.Ct. --- (1972) ("I can't see what the key has to do with this case, frankly."); *State v. Conrad,* 275 N.C. 342, 168 S.E. 2d 39 (1969) ("I don't see the relevancy, but I don't see the harm."); and *State v. Currie,* 293 N.C. 523, 238 S.E. 2d 477 (1977) ("I fail to see any relevance to this."). Nor is this a case like *State v. Holden,* 280 N.C. 426, 185 S.E. 2d 889 (1972), in which the Supreme Court found the judge's indiscreet and improper remarks harmless because Holden, although tried on second degree murder, was convicted of manslaughter. Specifically, the *Holden* Court said:

> The judge's critical remarks were indiscreet and improper, and should not have been made. In a different setting they could be prejudicial so as to require a new trial. Here, however, in light of the evidence and considering the totality of circumstances, we hold that the comments from the bench of which defendant complains, constituted harmless error.

> The facts and attendant circumstances in this case reveal a senseless killing, apparently without the slightest provocation. The evidence would support a conviction of murder in the second degree. Defendant offered no evidence in explana-

State v. Majors

tion or mitigation. . . . Even so, defendant was only convicted of manslaughter. In this setting it is apparent that the words of the judge here under attack had no prejudicial effect on the result of the trial and must therefore be considered harmless.

280 N.C. at 430, 185 S.E. 2d at 892.

The "different setting" referred to in *Holden* is present in this case. In the case *sub judice*, the evidence elicited by defendant on cross-examination regarding William Corbett's size, his aggressiveness and combativeness, and the out-of-court statement by one of the State's witnesses, offered in evidence by the State, that she saw a tussle between defendant and William Corbett at the time Corbett was stabbed distinguishes this case from *Holden*. Moreover, in this case, defendant was found guilty of second degree murder, not a lesser offense.

Believing that the circumstances "might reasonably have had a prejudicial effect on the result of the trial . . . ," *State v. Perry*, 231 N.C. 467, 471, 57 S.E. 2d 774, 777 (1950), we grant defendant a new trial, and we close with the words of our Supreme Court in 1907 that the judge

should be the embodiment of even and exact justice. He should at all times be on the alert, lest, in an unguarded moment, something be incautiously said or done to shake the wavering balance which, as a minister of justice, he is supposed, figuratively speaking, to hold in his hands. Every suitor is entitled by the law to have his cause considered with the 'cold neutrality of the impartial judge' and the equally unbiased mind of a properly instructed jury. This right can neither be denied nor abridged.

*Withers v. Lane*, 144 N.C. 184, 191-92, 56 S.E. 855, 857-58 (1907).

For the foregoing reasons, defendant is entitled to a

New trial.

Judge JOHNSON concurs.

Judge MARTIN dissents.

Judge MARTIN dissenting.

I must respectfully dissent from the majority opinion. In so doing, I hasten to add that I do not commend or approve the ill-advised and intemperate remarks of the trial court to counsel regardless of whether they were made in the presence or absence of the jurors. It is my belief that attorneys who appear in the trial courts of this state, as well as their clients, are entitled to be treated with the same degree of respect and courtesy as the court is entitled to receive from them. Canon 3A(3) of the North Carolina Code of Judicial Conduct provides: "A judge should be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, and others with whom he deals in his official capacity, and should require similar conduct of lawyers, and of his staff, court officials, and others subject to his direction and control." To require any less standard would diminish the public confidence in the integrity and impartiality of our judicial system. Injudicious treatment of litigants or their counsel by judges at any level cannot be condoned.

The question before us on appeal, however, is not whether the remarks of the trial judge were inappropriate; of that there is no room for disagreement. The question is whether the remarks, under all of the circumstances of this case, were prejudicial to the defendant's cause so as to entitle her to a new trial.

> Not every ill-advised expression by the trial judge is of such harmful effect as to require a reversal. The objectionable language must be viewed in light of all the facts and circumstances, "and unless it is apparent that such infraction of the rules might reasonably have had a prejudicial effect on the result of the trial, the error will be considered harmless."

*State v. Holden*, 280 N.C. 426, 430, 185 S.E. 2d 889, 892 (1972), *quoting State v. Perry*, 231 N.C. 467, 471, 57 S.E. 2d 774, 777 (1950).

The court's unfortunate remarks were made during jury selection on the afternoon of 28 November 1983, during a bench conference regarding jury selection. Unfortunately they were overheard by two jurors. Although the better practice would have been for the court to examine these two jurors separately as to what they had heard and its effect, if any, upon them, the court

chose instead to permit defense counsel to examine them in the presence of all of the jurors with the result that all of the jurors were made aware of what had been said. Even so, none of the jurors indicated, in response to questioning, that the court's remarks had prejudiced them against the State or the defendant. The selection of an alternate juror was then completed and the jury was empaneled. The trial resumed on 29 November and concluded on 30 November with a verdict finding the defendant guilty of second degree murder. The transcript does not reveal any instance during the presentation of evidence, the jury arguments or the instructions when the trial judge acted in any manner other than with complete impartiality and courtesy to all participants. At the conclusion of the instructions the court admonished the jurors

> not to draw any inference from any ruling that I have made or any inflection in my voice or any expression on my face or any question I have asked a witness *or anything else that I may have said or done during this trial* that I have an opinion or have intimated an opinion as to whether any part of the evidence should be believed or disbelieved, as to whether a fact has or has not been proved or as to what your findings ought to be . . . .

(Emphasis added.)

Thus, an examination of the record indicates a single occurrence at the initial stage of the trial, rather than "a general tone or trend of hostility or ridicule which has a cumulative effect of prejudice" as was the case in *State v. Staley*, 292 N.C. 160, 165, 232 S.E. 2d 680, 684 (1977), relied upon by the majority. In *Staley*, there was repeated interrogation of a witness by the trial judge, repeated failure to rule on objections made by defense counsel, and a heated reprimand of defense counsel by the judge for "speech-making" giving rise to the possibility that, on the totality of the trial record, the jury may have inferred that the trial judge was expressing an opinion. The record in the case *sub judice* is devoid of such circumstances which might give the impression of "judicial leaning." Rather, the incident which occurred during jury selection fits more nearly the situation described by Justice Exum when he wrote, in *Staley, supra* at 162, 232 S.E. 2d at 682, "We recognize that both the trial judge and the lawyer are

human and that quite heated conversations may ensue with the preservation nonetheless of strict impartiality on the one hand and consistent respect on the other."

The burden of showing that she has been deprived of a fair trial by remarks of the trial judge is upon the defendant. *State v. Greene,* 285 N.C. 482, 206 S.E. 2d 229 (1974); *State v. Green,* 268 N.C. 690, 151 S.E. 2d 606 (1966). The defendant argues, and the majority holds, that prejudice is apparent because the defendant was convicted of the offense with which she was charged. Again, I must disagree. The evidence presented at trial showed that the defendant and the victim, William Corbett, had been living together but that their relationship had deteriorated. On 11 July 1983, Corbett moved his belongings out of the residence and evidently destroyed some of the defendant's clothes. Upon returning to the residence and finding Corbett's belongings gone and her clothing damaged, the defendant called a friend, Julia Mosley, to come to the residence. When Mosley arrived, the defendant requested her to drive the defendant to the home of another acquaintance, where the defendant obtained a large kitchen knife, telling the acquaintance that Mosley wanted the knife. Julia Mosley then drove the defendant back to the defendant's residence. When they arrived, William Corbett was there with Johnny Copeland, cleaning out the garage. The defendant walked up to the decedent and stabbed him. According to Julia Mosley, there was a "tussle," which she described as an arm being raised; she did not see whose arm it was. Immediately thereafter Corbett ran away, saying that he had been stabbed. Johnny Copeland testified that Corbett was leaning over a trash box when the defendant stabbed him in the ribs. The defendant's statement to law enforcement officers, offered by the State, was inconsistent, but considered in the light most favorable to her, tended to show that as she walked by Corbett with the knife he asked her what she had in her hand. When she responded that she had a knife and was taking it in the house, Corbett tried to grab her hand and she stabbed him, she thought, in the leg. In fact, Corbett was stabbed through the heart. The defendant offered no evidence. Her counsel advised the Court that, in his opinion, the evidence did not support an instruction on self-defense. The Court submitted second degree murder, voluntary manslaughter (committed during heat of passion) and not guilty as the possible verdicts. The

jury convicted the defendant of second degree murder. The evidence of passion produced upon adequate provocation was minimal at best, and arose, if at all, only upon the defendant's statement. The evidence with regard to Corbett's size and aggressiveness does not provide the "different setting" described by the majority in attempting to distinguish this case from *State v. Holden, supra*; self-defense was not present.

On this record, there is no reason to believe that another trial would produce a different result more favorable to the defendant. "The bare possibility . . . that an accused may have suffered prejudice from the conduct or language of the judge is not sufficient to overthrow an adverse verdict." *State v. Carter*, 233 N.C. 581, 583, 65 S.E. 2d 9, 10-11 (1951). Although the trial judge's improvident remarks to counsel were error, I do not find them prejudicial.