**Joseph WALKER, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 383, 2000.

Supreme Court of Delaware.

Submitted: Dec. 11, 2001.

Decided: Jan. 31, 2002.

Lloyd A. Schmid, Jr., Esquire, Office of the Public Defender, Dover, Delaware, for appellant.

Stephen R. Welch, Esquire, Department of Justice, Dover, Delaware, for appellee.

Before VEASEY, Chief Justice, HOLLAND and BERGER, Justices.

HOLLAND, Justice.

The defendant-appellant, Joseph Walker, was indicted on two counts of Rape in the Second Degree, two counts of Rape in the Third Degree, one count of Reckless Endangering in the First Degree and one

count of Distributing Alcohol to a Minor. Prior to trial, the State entered a *nolle prosequi* on the Distributing Alcohol to a Minor charge. At trial the Superior Court submitted the two counts of Rape in the Third Degree to the jury as a lesser included offense to each count of Rape in the Second Degree, rather than as separate charges.

Following a jury trial in the Superior Court, Walker was convicted on one count of Attempted Rape in the Second Degree. He was acquitted of one count of Rape in the Second Degree. He was also acquitted of Reckless Endangering in the First Degree.

The State moved to have the Superior Court declare Walker an habitual criminal under title 11, sections 4214(a) and 4214(b) of the Delaware Code. The Superior Court conducted an habitual criminal status hearing and issued an order declaring Walker an habitual criminal under sections 4214(a) and 4214(b). The Superior Court sentenced Walker under section 4214(b) to life in prison without parole.

In this appeal, Walker challenges his conviction of Attempted Rape in the Second Degree on three grounds. First, he challenges the trial judge's ruling that permitted the State, under Delaware Uniform Rule of Evidence 609(a), to admit his prior felony drug convictions for impeachment purposes, upon his testifying in his own defense. According to Walker, that ruling dissuaded him from testifying and infringed upon his constitutional right to testify at trial. Second, Walker argues that certain of the prosecutor's statements made during closing argument and rebuttal summation were improper and constituted reversible error. Finally, Walker argues that the Superior Court erred in declaring him an habitual criminal under sections 4214(a) and 4214(b).

We have concluded that the issue of alleged improper prosecutorial remarks during closing argument and rebuttal summation should be considered in the first instance in a Superior Court Criminal Rule 61 motion for ineffective assistance of trial counsel. We have concluded that Walker's other two arguments are without merit. Accordingly, the judgment of the Superior Court is affirmed.

*Facts*

On October 3, 1998, Walker, a thirty-two-year-old male, drove Jessica Johnson, a sixteen-year-old girl, to her friend's home. They picked up Crysta Adkins, Johnson's fifteen-year-old friend, at her home and drove to a liquor store where Walker bought a pint of gin. All three drove to a nearby park where Walker and Adkins drank the gin. Walker then drove the two girls to buy another bottle of gin and marijuana, which they consumed in the same park. Adkins became intoxicated to the point that she could not walk and became sick.

Walker next drove the two girls to his friend's trailer home in Dover. Walker's friend, John Diaz, owned the trailer home and lived in it with his girlfriend Karen Jenkins. At the trailer, Walker and Diaz took Adkins out of the car and put her on a sofa where she fell asleep or passed out. Johnson then asked Jenkins to give her a ride to a telephone booth where she could make a call and to pick up another friend. Jenkins took Johnson to the telephone booth while Adkins remained in the trailer with Walker and Diaz. In their absence, Diaz decided to leave the trailer and walk down his driveway to see if Johnson and Jenkins were done using the telephone.

When Diaz left the trailer, Adkins testified that Walker "showed [her] his private area" and tried to get on top of her and pull her pants down. She testified that

she tried to push him away and told him "no, get off me." Adkins further testified Walker was "still on top of [her]" when Diaz walked into the trailer.

About fifty feet away from the trailer, Diaz began hearing "hollering and screaming." Diaz heard Adkins say, "Stop! I don't want to do this." Afraid that his neighbors might call the police, Diaz repeatedly yelled for Walker and Adkins to keep quiet. When he entered the trailer he saw Walker "standing top of the girl" while Adkins was still on the couch. Walker got up, walked towards the door and went outside. Diaz testified that Walker was clothed but that he could not recall if Adkins had her clothes on.

Walker then reentered the trailer to tell Adkins he would take her and Johnson to their friend's house. Adkins could not find Johnson outside but went with Walker to supposedly "meet her somewhere." Walker drove Adkins around, dropped her off at a pay phone in an unfamiliar area and then returned to offer her a ride home.

According to Adkins, once she got back in the car, Walker "showed [her] his private area again." Adkins testified that Walker forcibly engaged in sexual intercourse while she lay reclined in the passenger seat of the car. She testified that she tried to push him off of her and told him no. Walker then dropped her off at a house next to her grandmother's home where she called and told her mother she had been raped.

Adkins' mother, Doreen Pierce, picked up Adkins, called the police and drove her to Kent General Hospital. At the hospital, Adkins was examined by a physician. The doctor concluded that observations of Adkins were consistent with sexual intercourse but that she could not be certain Adkins had sexual intercourse prior to the examination. That night Adkins filed a complaint with the Delaware State Police and gave a tape-recorded statement. Adkins asserted in her statement that Walker had vaginally raped her once in Diaz's trailer home and a second time in Walker's car.

### Impeachment Evidence

■ Walker challenges the trial judge's ruling that permitted the State, under Delaware Uniform Rule of Evidence 609(a), to admit evidence of two prior felony drug convictions to impeach Walker if he testified. He argues that this ruling dissuaded him from testifying and infringed upon his constitutional right to testify at trial. The record, however, does not support Walker's claim. We "cannot assume" that Walker's decision to forego testifying at trial was attributable solely to the trial judge's *in limine* ruling.[1]

At trial, the State moved *in limine* for a ruling by the trial judge on the admissibility of evidence under Delaware Uniform Rule of Evidence 609(a) that Walker had prior felony convictions.[2] The trial judge ruled that Walker's 1991 and 1992 felony convictions could be admitted to impeach Walker on the issue of his credibility. Walker argues that based upon this ruling he decided not to testify at trial.

By not testifying, Walker has precluded any meaningful review of the trial judge's ruling. On this record, a determination that possible harm resulted from the trial

---

1. *Luce v. United States*, 469 U.S. 38, 42, 105 S.Ct. 460, 83 L.Ed.2d 443 (1984).

2. The State moved to admit the following felony convictions under Delaware Uniform Rule of Evidence 609(a): Maintaining a Vehicle for Keeping Controlled Substances (1991); Trafficking in Cocaine (1992); and Receiving a Stolen Firearm, Carrying a Concealed Deadly Weapon and Possession of a Deadly Weapon by a Person Prohibited (2000).

judge's ruling permitting impeachment would be "wholly speculative."[3] This Court has no testimony to evaluate and "no way of knowing whether the trial court would have modified its ruling in light of the evidence presented."[4] In fact, the State might have decided not to use the prior felony convictions to impeach Walker at trial.

Although Walker argues the trial judge's ruling dissuaded him from testifying, "an accused's decision whether to testify seldom turns on the resolution of one factor."[5] "A reviewing court cannot assume that the adverse ruling motivated a defendant's decision not to testify."[6] This Court has further held that a defendant challenging a trial court's ruling on the admissibility of a prior conviction for impeachment purposes must first testify and then challenge that ruling on appeal.[7] Walker did not testify at trial. Accordingly, he has not presented any factual basis on the record to support this claim on appeal.

### Prosecutorial Misconduct

In his second argument on appeal, Walker contends that the prosecutor's closing and rebuttal summation were both improper, violated his constitutional right to a fair trial and constituted reversible error. In particular, Walker challenges the prosecutor's statements during closing argument and rebuttal summation that criticized defense counsel's cross-examination of Crysta Adkins. In his challenge to the closing argument and rebuttal summation, Walker refers to the following: the prosecutor's request that the jury examine the tone of defense counsel's cross-examination of Adkins, the alleged victim, as opposed to other witnesses; the prosecutor's characterization of defense counsel's cross-examination as "very loud," "rapid-fire," and intending to "intimidate" and "confuse" Adkins; the prosecutor's description of defense counsel as "reacting to [Adkins]" so that the jury "might have found it difficult in [their] mind to digest her answers from [defense counsel's] reactions to her testimony;" and the prosecutor's conclusion and submission to the jury that defense counsel treated Adkins "without respect" and for the jury not to "let that lack of respect be contagious and influence or color the way [the jury] evaluate[ed] [Adkins'] testimony."

 All of the alleged improper prosecutorial statements cited by Walker focus on the method, manner and tone of his defense counsel's cross-examination of Crysta Adkins. In our adversarial system, defense counsel is not only permitted but is expected to be a zealous advocate for the defendant.[8] Defense counsel's role effectuates a defendant's right to confrontation primarily through the cross-examination of the State's witnesses.[9] "It is the essence of a fair trial that reasonable latitude be given the cross-examiner" in putting the weight of the witnesses' testimony and credibility to a test so that the jury can

**3.** *Luce v. United States,* 469 U.S. at 41, 105 S.Ct. 460.

**4.** *Fennell v. State,* 691 A.2d 624, 625 (Del. 1997).

**5.** *Luce v. United States,* 469 U.S. at 42, 105 S.Ct. 460.

**6.** *Id.* (citation omitted).

**7.** *Fennell v. State,* 691 A.2d at 625; *Brock v. State,* 2000 WL 127653, at *7 (Del.Supr.).

**8.** Delaware Lawyers' Rules of Prof'l Conduct, Preamble (2002).

**9.** *Michael v. State,* 529 A.2d 752, 760 n. 14 (Del.1987); *see also* U.S. Const. amend. VI; Del. Const. art. I, § 7.

fairly appraise them.[10]

 Although the prosecutor has wide latitude in summation, he or she may not employ argument to denigrate the role of defense counsel "by injecting his [or her] personal frustration with defense tactics."[11] The latitude afforded the prosecutor does not permit an invitation for the jury to reach a decision on matters outside the evidence introduced at trial.[12] This Court has quoted with approval, the American Bar Association's Standards for Criminal Justice 4–7.8(d) that "[a] lawyer [in closing argument] should refrain from argument which would divert the jury from its duty to decide the case on the evidence by injecting issues broader than the guilt or innocence of the accused ...."[13] Accordingly, the prosecutor is expected to "refrain from impugning, directly or through implication, the integrity or institutional role of defense counsel."[14]

 In this case, the prosecutor's remarks to the jury in closing argument and rebuttal summation cumulatively served to denigrate the role of defense counsel and the defensive strategy employed. Defense counsel's duty to represent his client vigorously required him to present all admissible evidence that favored Walker and to scrutinize through cross-examination unfavorable testimonial evidence.[15] It is impermissible for a prosecutor to make a closing argument that "limits the fundamental due process right of an accused to present a vigorous defense."[16] The danger underlying such statements is that they invite the jury to "punish the [defendant] for making the [alleged] victim of the crime go through the ordeal of cross-examination, which the [defendant] has every right to do."[17] The prosecutor's statements implicated the defendant's constitu-

10. *Michael v. State,* 529 A.2d at 760 (quoting *Alford v. United States,* 282 U.S. 687, 692, 51 S.Ct. 218, 75 L.Ed. 624 (1931)).

11. *State v. Peacock,* 2001 WL 233399, at *5 (Ohio App.) (quoting *State v. Smith,* 130 Ohio App.3d 360, 720 N.E.2d 149, 154–55 (1998)); *see also United States v. McLain,* 823 F.2d 1457, 1462 (11th Cir.1987) (stating "counsel is entitled to courtesy and respect"); *Williams v. State,* 491 A.2d 1129, 1135 (Del.1985) (finding prosecutor's single comment in summation that defense counsel did not act in good faith in stating his opinion of the facts and circumstances of the case inappropriate).

12. *See Berger v. United States,* 295 U.S. 78, 88, 55 S.Ct. 629, 79 L.Ed. 1314 (1935).

13. *Michael v. State,* 529 A.2d at 763 n. 20. In *Brokenbrough v. State,* the Court also quoted with approval the American Bar Association's Standards for Criminal Justice relating to the Prosecution and Defense Functions:

Standard 3–5.6 Presentation of evidence.
(b) A prosecutor should not knowingly and for the purpose of bringing inadmissible matter to the attention of the judge or jury offer inadmissible evidence, ask legally objectionable questions, or make other imper-

missible comments or arguments in the presence of the judge or jury.
*Brokenbrough v. State,* 522 A.2d 851, 855 (Del. 1987) (quoting ABA Standards, the Prosecution and Defense Functions (Approved Draft, 1971) Standard 5.6 now adopted as Standard 3–5.6); ABA Standards for Criminal Justice Prosecution Function and Defense Function 100–01 (3d ed.1993); *see also Trump v. State,* 753 A.2d 963, 967 (Del.2000).

14. *United States v. Procopio,* 88 F.3d 21, 32 (1st Cir.1996) (quoting *United States v. Bennett,* 75 F.3d 40, 46 (1st Cir.1996)); *United States v. Boldt,* 929 F.2d 35, 40 (1st Cir.1991); *see also United States v. Childress,* 58 F.3d 693, 716 (D.C.Cir.1995) (noting that "attacks on opposing counsel [were] inappropriate in closing argument").

15. *State v. Majors,* 73 N.C.App. 26, 325 S.E.2d 689, 691 (1985) (quoting Annotation, 62 A.L.R.2d 166, 237 (1958)), *aff'd* 314 N.C. 111, 331 S.E.2d 689 (1985).

16. *Sizemore v. Fletcher,* 921 F.2d 667, 671 (6th Cir.1990).

17. *State v. Willard,* 144 Ohio App.3d 767, 761 N.E.2d 688, 2001 WL 921413, at *6 (2001)

tional right to confrontation and denigrated the defendant's counsel for exercising that right to confront the State's primary witness.[18]

 The State submits that the prosecutor's closing argument was within the bounds of proper prosecutorial comment. According to the State, the statements at issue were made to accomplish three purposes: to point out that Adkins' testimony should be evaluated in light of the fact she went through a tough cross-examination, to ensure the jury was aware that defense counsel's reactions to her testimony were not evidence and should be disregarded, and to ensure defense counsel's treatment of Adkins during cross-examination did not cause the jury to question her credibility. Arguments by the prosecutor to the jury, however, should focus on *evidence* introduced at trial rather than on his or her opinion of defense counsel's personality or trial strategy.[19] It is impermissible for a prosecutor to discredit defense counsel in front of the jury.[20] Even subsequent jury instructions to rectify that type of error "may not ensure that [such] disparaging remarks have not already deprived the defendant of a fair trial." [21]

 At trial, Walker's defense counsel did not object to any of the alleged improper statements but instead apparently chose to respond to the statements in defense counsel's closing argument. Although defense counsel decided to explain his institutional role at trial to the jury, improper closing remarks should be meet with an objection.[22] Generally, counsel's failure to make a contemporaneous objection to improper closing arguments constitutes a waiver of the right to raise such alleged error on appeal.[23] Alternatively, however, this Court has the discretion to apply a plain error standard of review and conclude that the prosecutor's statements deprived Walker of a substantial right or clearly demonstrated manifest injustice.[24]

In the exercise of our discretion, we decline to review the prosecutor's comments for plain error. We have concluded that any challenge to the prosecutor's statements is best decided in the context of what appears to be defense counsel's strategic decision to respond to such statements in summation rather than to make a contemporaneous objection. The efficacy of that strategic decision by defense counsel can only be addressed fairly if a complete record is developed.

### Habitual Criminal Status

 Walker was sentenced as an habitual criminal to life in prison without parole

---

(quoting *Burns v. Gammon*, 173 F.3d 1089, 1095 (8th Cir.1999)).

**18.** *Id.* at *6.

**19.** ABA Standards for Criminal Justice 4–7.8(a) (2d ed.1980); Delaware Lawyers' Rules of Prof'l Conduct Rule 3.4 (2002).

**20.** *United States v. McLain*, 823 F.2d at 1462 (citing *Zebouni v. United States*, 226 F.2d 826, 827 (5th Cir.1955)).

**21.** *Id.*

**22.** *Michael v. State*, 529 A.2d at 762–63. "Defense counsel, like the prosecutor, must [simi-

larly] refrain from interjecting personal beliefs and facts outside of the record into the argument to the jury." *Id.* at 763; *see also Trump v. State*, 753 A.2d at 970 (noting that "to provide effective assistance to the defendant" defense counsel "must be alert to avoid waiver and should weigh more heavily the wisdom of objecting than a tactical decision to remain silent").

**23.** *Brokenbrough v. State*, 522 A.2d at 856 (citing *Goddard v. State*, 382 A.2d 238, 242 (Del.1977)).

**24.** *Michael v. State*, 529 A.2d at 762 (quoting *Ward v. State*, 366 A.2d 1194, 1197 (Del. 1976)).

pursuant to title 11, section 4214(b) of the Delaware Code. Walker argues that the Superior Court's decision to sentence him as an habitual criminal was not supported by substantial evidence in the record. At Walker's status hearing, the State presented evidence to establish that Walker had been convicted of more than three prior predicate felonies.

To prove Walker's predicate felonies, the State introduced into evidence: eight certified Superior Court dockets providing the procedural history of Walker's prior prosecutions in the Superior Court, including certified dockets for his prior Possession with Intent to Deliver Marijuana and Trafficking Cocaine convictions; six arrest cards prepared by the arresting agency upon Walker's prior arrests, including arrests that led to convictions for Possession with Intent to Deliver Marijuana and Trafficking Cocaine; five file cards from the Attorney General's office pertaining to his prior Superior Court prosecutions; an inked impression of Walker's right thumbprint taken at the May 10, 2000 Hearing; and a copy of Walker's criminal history contained in the presentence report. The State traced Walker's prior felony convictions by comparing notations and identification numbers on the arrest cards, the Attorney General's file cards and the certified Superior Court dockets. The State, through a fingerprint expert employed by the State Bureau of Identification, offered testimony that the thumbprint on Walker's six arrest cards matched the right thumbprint taken at the May 10, 2000 Hearing.

Upon this evidence, the Superior Court found that the State had established beyond a reasonable doubt that Walker was convicted of four predicate felonies in 1985, 1989, 1991, and 1992. Together with the Attempted Rape in the Second Degree conviction, Walker had at least five felony convictions to satisfy the requirements of section 4214(a). The Superior Court determined Walker also satisfied section 4214(b), since the Attempted Rape in the Second Degree conviction with his prior 1989 Possession with Intent to Deliver Marijuana and 1992 Trafficking in Cocaine convictions constituted the third conviction of a crime of the type set forth in the statute. Since section 4214(b) imposes a mandatory life sentence when applicable, the Superior Court sentenced Walker to life without parole under this section.

The Superior Court's determination that the defendant is an habitual criminal must be supported "by substantial evidence in the record and be free from legal error and abuse of discretion."[25] The State presented substantial evidence at the status hearing to prove that Walker was in fact the defendant who had committed the prior predicate felonies. The Superior Court properly admitted the Attorney General's file cards under Delaware Uniform Rule of Evidence 803(6)[26] and also properly admitted the remainder of the State's evidence.

**25.** *Morales v. State,* 696 A.2d 390, 394 (Del. 1997).

**26.** Despite the State's categorization of the May 10, 2000 "evidentiary hearing" as a "sentencing hearing," the Delaware Rules of Evidence govern a hearing to determine a defendant's habitual criminal status. D.R.E. 1101; *see also Bailey v. State,* 450 A.2d 400, 405 (Del.1982) (Superior Court's taking judicial notice of its own records to establish prior judgments under the Delaware Uniform Rules of Evidence was proper). Section 4215(b) contemplates a separate hearing on habitual criminal status prior to sentencing in which "the prior convictions are subject to a trial adjudication." *Bailey v. State,* 450 A.2d at 404; *Alls v. State,* 1988 WL 26590, at *8–9 (Del.Supr.). In such a hearing, a defendant facing habitual criminal proceedings must have "reasonable notice of the State's intent to seek additional punishment, be present with counsel, have an opportunity to be heard, be confronted with witnesses against him [or her], have the right to cross-examine,

From this evidence, the Superior Court carefully compared arrest reports, the Attorney General's records and certified court transcripts[27] for each offense to ensure that the arrest and conviction corresponded. Where the certified court transcript did not clearly reflect the exact criminal offense, the Superior Court referred to the defendant's criminal history record contained in the presentence report.[28] The Superior Court's habitual offender determination was supported by substantial evidence and free from legal error. Accordingly, the Superior Court properly concluded that Walker was an habitual criminal under sections 4214(a) and 4214(b).

### Conclusion

The judgment of the Superior Court is affirmed.

---

and to offer evidence of his own." *Key v. State,* 463 A.2d 633, 639 (Del.1983) (quoting *Specht v. Patterson,* 386 U.S. 605, 610, 87 S.Ct. 1209, 18 L.Ed.2d 326 (1967)).

**27.** *Bailey v. State,* 450 A.2d at 405 ("Judicial notice by the Superior Court of its own records to establish prior judgments is proper"); see *Bass v. State,* 2000 WL 1508724, at *10

(Del.Supr.) (determining a Superior Court's finding legally correct that certified records of a defendant's prior felony convictions were *prima facie* evidence of such convictions).

**28.** *Oney v. State,* 446 A.2d 389, 395 (Del.1982) (holding "presentence reports are properly admissible in habitual criminal proceedings to show a defendant's prior criminal record").