An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-75

NORTH CAROLINA COURT OF APPEALS

Filed: 1 July 2014

BRENDELL BOTTOMS,
     Plaintiff,

vs.                                   Nash County
                                      No. 11-CVD-1697
EDWARD EARL STRUM and, DALE
GRIFFIN STRUM,
     Defendants


Appeal by Plaintiff from judgment entered 7 May 2013 by Judge John J. Covolo in Nash County District Court. Heard in the Court of Appeals 19 May 2014.

> *Curtner Law Firm, by Tracy C. Curtner, for Plaintiff.*
>
> *W. Michael Spivey for Defendants.*

DILLON, Judge.

Brendell Bottoms (Plaintiff) appeals from a judgment decreeing, *inter alia*, that Plaintiff had entered into a valid binding contract with Edward Earl Strum and Dale Griffin Strum (Defendants) to swap Plaintiff's motorcycle for Defendants' boat. For the following reasons, we affirm.

I. Factual & Procedural Background

Plaintiff and her husband, Steve Bottoms, have known Defendants for many years. On multiple occasions – prior to the transaction now at issue – they had discussed trading Plaintiff's 2002 Harley-Davidson motorcycle for Defendants' 2001 Chaparral boat. On or about 24 July 2011, the parties again discussed such a trade. Plaintiff inspected Defendants' boat that day, and Defendants inspected Plaintiffs' motorcycle the following day. The parties physically exchanged these items a few days later, though the parties dispute whether a permanent trade of the vehicles was conditioned upon Plaintiff's satisfaction with a test run of the boat; Plaintiff insists it was, while Defendants maintain that the trade was completed and not conditioned on any further inspections.

The boat failed Plaintiff's test run. In Plaintiff's words, "Within fifteen minutes of pulling away from the dock, the boat ran hot." The boat subsequently failed a second test run the following weekend, when it again "ran hot." Plaintiff telephoned Defendants to inform them of the problems with the boat, and Earl Strum instructed Plaintiff to bring the boat to Defendants' residence. Plaintiff transported the boat to Defendants' residence, but, finding that Defendants were not at home, left the boat on Defendants' property without retrieving

the motorcycle. Defendants have not returned the motorcycle to Plaintiff and remain in possession of both vehicles.

On 13 October 2011, Plaintiff filed a complaint against Defendants, alleging, *inter alia*, breach of contract, and seeking an injunction requiring Defendants to return the motorcycle to Plaintiff. On 13 February 2012, Defendants filed an answer and counterclaim, requesting a ruling "that there [was] a fully executed Contract between the parties" and that title to the "Boat [] be issued to [Plaintiff] and [] title to the Motorcycle [] be issued to the Defendants."

The matter came on for a bench trial in Nash County District Court on 19 February 2013. After hearing testimony from both sides, the trial court entered a judgment, filed 7 May 2013, in which it determined, *inter alia*, that "[t]he parties entered into a contract for the trade of the boat for the motorcycle on or about Monday July 25, 2011 and executed the contract on or about July 27, 2011 when Plaintiff took possession of the Boat and Defendant's [sic] took possession of the Motorcycle"; that "Defendant's [sic] did not breach the contract with Plaintiff"; that there were no grounds for rescission of the contract; and that "Defendants are the rightful owners of the [motorcycle] and the Plaintiff is the

owner of the [boat]." The court found meritless and/or dismissed Plaintiff's claims and ordered that Plaintiff transfer title to the motorcycle to Defendants and obtain title to the boat from Defendants. From this order, Plaintiff appeals.

## II. Analysis

Our standard of review on appeal from a bench trial in which the court sits without a jury "is whether there was competent evidence to support the trial court's findings of fact and whether its conclusions of law were proper in light of such facts. Findings of fact by the trial court in a non-jury trial are conclusive on appeal if there is evidence to support those findings." *Hanson v. Legasus of N.C., LLC*, 205 N.C. App. 296, 299, 695 S.E.2d 499, 501 (2010). The "trial court's conclusions of law, however, are reviewable *de novo*." *Id.*

## A. Meeting of the Minds

Plaintiff first contends that "[t]he trial court erred in concluding as a matter of law that an enforceable contract existed between the parties as there was no meeting of the minds." We disagree.

"To constitute a valid contract, the parties 'must assent to the same thing in the same sense, and their minds must meet as to all the terms. If any portion of the proposed terms is

not settled, or no mode agreed on by which they may be settled, there is no agreement.'" *Boyce v. McMahan*, 285 N.C. 730, 734, 208 S.E.2d 692, 695 (1974) (citations omitted); *Creech v. Melnik*, 347 N.C. 520, 527, 495 S.E.2d 907, 911-12 (1998) ("It is essential to the formation of any contract that there be 'mutual assent of both parties to the terms of the agreement so as to establish a meeting of the minds.'" (Citation omitted)).

Plaintiff argues that there was never a "meeting of the minds" with respect to the parties' agreement to exchange their vehicles *permanently*, since Plaintiff believed that the permanency of trade was conditioned upon her satisfaction with the boat following a "test run," whereas Defendants believed it was a "done deal" at the time the vehicles were physically exchanged. This issue of whether a meeting of the minds in fact occurred was the focus of the parties' testimonies at trial. The parties maintained their respective, contrary positions, and the court, upon considering the totality of the evidence, essentially accepted Defendants' version of the events over the version of the events offered by Plaintiff and Mr. Bottoms.

As indicated in our standard of review, *supra*, this Court is not at liberty to re-weigh the evidence presented at trial. *Hanson*, 205 N.C. App. at 299, 695 S.E.2d at 501; *Coble v. Coble*,

300 N.C. 708, 712-13, 268 S.E.2d 185, 189 (1980) ("The trial court must itself determine what pertinent facts are actually established by the evidence before it, and it is not for an appellate court to determine de novo the weight and credibility to be given to evidence disclosed by the record on appeal."). Accordingly, in the instant case, we must uphold the trial court's judgment if there was any competent evidence to support the court's findings – even if there was also evidence offered that tended to contradict those findings, *Blackwell v. Butts*, 278 N.C. 615, 619, 180 S.E.2d 835, 837 (1971) – and if those findings, in turn, support the court's conclusion that a valid contract existed between the parties. *Nationwide Mut. Ins. Co. v. Allison*, 51 N.C. App. 654, 657, 277 S.E.2d 473, 475 (1981).

The trial court's judgment includes the following pertinent findings:

> 7. That on or about, Monday, July 25, 2013 [sic], Defendants went to Plaintiff's home and inspected the Motorcycle and the parties agreed that they would trade the Boat for the Motorcycle. At that time, Plaintiff gave to Defendants the unsigned title to the Motorcycle, the owner's manual for the Motorcycle, leather jacket, leather chaps, leather saddle bags, helmets, and keys for the Motorcycle. At that time, Defendants gave to Plaintiff the owner's manual and other documentation for the Boat as well as the unsigned title for the Boat. Plaintiff's husband, Steve Bottoms, and

Defendant, Edward Earl Strum, shook hands[;] at that point the parties entered into a contract to trade the Boat for the Motorcycle.

8. The parties agreed to physically exchange the Boat and the Motorcycle within the next several days.

9. The parties agreed they would meet some point that week at a Notary Public to sign the titles to officially transfer titles each to the other. Defendant, Dale Griffin Strum, who has significant health problems, fell ill and could not meet Plaintiff to do so.

. . . .

11. That on or about, July 27, 2011, Defendant, Edward Earl Strum, delivered the Boat, trailer (and accessories such as life jackets and etc.) to Plaintiff's residence at which time she took possession of the Motorcycle. At this time the parties executed the contract.

. . . .

27. The parties entered into the contract for the trade of the Boat and the Motorcycle on or about Monday, July 25, 2011, and executed the contract on or about July 27, 2011, when Plaintiff took possession of the Boat and Defendants took possession of the Motorcycle.

. . . .

31. No credible evidence was offered that Defendants knew or should have or had reasonable grounds to know the Boat's engine was experiencing problems or other evidence of fraud. In fact, the evidence indicated

that Defendants were forthright with Plaintiff that the Boat had not been run in some time and needed to be checked and serviced prior to use. There was no evidence presented that either party had any licensed mechanic inspect the boat or any attempt of servicing the Boat prior to Plaintiff using or taking possession of the Boat.

Plaintiff specifically challenges each of the foregoing findings, thus requiring that we delve into the record to determine whether there was any competent evidence to support them. Our review of the trial transcript reveals that these findings are adequately supported by Defendants' testimony, which, again, serves as competent evidence for purposes of our review, notwithstanding testimony from Plaintiff and Mr. Bottoms to the contrary. Although Plaintiff does not appear to argue otherwise, we further conclude that these same findings, *supra*, support the court's legal conclusion that a contract existed between the parties to exchange the vehicles.

## B. Conditions Precedent

Plaintiff further contends that even "[i]f an enforceable contract existed between the parties, the trial court erred in failing to conclude as a matter of law that the contract was conditional and that all conditions precedent were not met." We disagree with Plaintiff's contentions on this issue for the same

reasons discussed in part II(A), *supra*. While it is true that testimony offered by Plaintiff and Mr. Bottoms tended to show that the parties' agreement was subject to a condition precedent – namely, that the boat perform to Plaintiff's (and her husband's) satisfaction on a test run – it is likewise true that that testimony was contradicted by testimony offered by Defendants, who maintained that their agreement was not subject to any such condition precedent. The trial court's findings reflect its acceptance of Defendants' account of the transaction, and this Court is bound to accept such findings, as they are supported by competent evidence in the form of Defendants' testimony. *Coble*, 300 N.C. at 712-13, 268 S.E.2d at 189. This argument is accordingly overruled.

## C. Conduct of the Trial Court

In her final argument on appeal, Plaintiff contends that "[t]he trial court created prejudicial error and exceeded its authority by virtue of its conduct during the trial." More specifically, Plaintiff asserts that the trial judge, *inter alia*, repeatedly interrupted Plaintiff's counsels during her examination of the witnesses; assisted the defense in its examination of the witnesses by "telegraph[ing] to defense counsel where his questions should lead"; "elicited

objectionable testimony by virtue of its questions to Mr. Bottoms and then sustained an objection by defense counsel to that very testimony"; and in short, prevented Plaintiff's counsel from "zealously represent[ing] her client" to the point that the court's actions "were so prejudicial to the Plaintiff that a reversal and remand for trial before a different trial judge are appropriate."

Plaintiff cites *State v. Majors* for the proposition that "some comments by trial judges . . . are so prejudicial that not even curative instructions can right the wrong." 73 N.C. App. 26, 27, 325 S.E.2d 689, 689 (1985). In *Majors*, this Court held that the defendant was entitled to a new trial after two members of the jury panel overheard the trial judge remark "that defense counsel 'had excused five whites' from the jury panel and that 'the court did not know what in the hell [defense counsel] was doing' or 'what in the hell was going on with this case.'" *Id.* at 26-27, 325 S.E.2d at 689 (alteration in original). In reaching our holding, we expressed concern regarding "the probable effect of the comments *on the jury*." *Id.* at 27, 325 S.E.2d at 689 (emphasis added); *see also State v. Holden*, 280 N.C. 426, 429-30, 185 S.E.2d 889, 892 (1972) ("[R]emarks from the bench which tend to belittle and humiliate counsel, or which

suggest that counsel is not acting in good faith, reflect not only on counsel but on the defendant as well and may cause the jury to disbelieve all evidence adduced in defendant's behalf. Any remark of the presiding judge, made in the presence of the jury, which has a tendency to prejudice the jury against the unsuccessful party is ground for a new trial." (Citations and quotation marks omitted)).

Here, there was no jury – but instead a bench trial – and thus the concerns raised in *Majors* were not present. Moreover, we have reviewed the trial transcript and conclude that the trial court's conduct was within its authority. For instance, the first "interruption" to which Plaintiff directs this Court – reflected on page five of the trial transcript – consists of the following exchange:

> [Plaintiff's counsel]: All right. And were you involved in picking out the boat?
>
> [Ms. Strum]. Uh ----
>
> THE COURT: Okay. Um . . . is that relevant? Let's stick to what's relevant ---
>
> [Plaintiff's counsel]: I can move past that.
>
> THE COURT: [U]nless that's relevant, let's . . . . Who cares who picked out the boat?

This exchange is representative of the trial court's interjections, which appear motivated primarily by the court's

intention to reduce the "he said, she said" testimony to the relevant facts underlying the transaction at issue. "It is the trial judge's . . . duty to . . . *ascertain the truth*[,]" *N.C. State Bar v. Talman*, 62 N.C. App. 355, 362, 303 S.E.2d 175, 179 (1983) (emphasis added), whether it be through asking additional questions for clarification, through confining the scope of witness testimony and/or counsel's line of questioning, or through any other reasonably tailored means of unearthing the facts pertinent and necessary to a complete understanding of the issues at hand. The conflicting testimony presented in the instant case required that the trial court remain active and press the parties and their attorneys in order to get to the bottom of their dispute. Plaintiff's contentions on this issue are overruled.

## III. Conclusion

For the foregoing reasons, the trial court's judgment is hereby

AFFIRMED.

Chief Judge MARTIN and Judge STEELMAN concur.

Report per Rule 30(e).