Franklin FENNELL, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 521, 1995.

Supreme Court of Delaware.

Submitted Jan. 14, 1997.
Decided April 7, 1997.

Joseph A. Hurley, Wilmington, for Appellant.

William E. Molchen, Deputy Attorney General, Wilmington, for Appellee.

Before HOLLAND, HARTNETT and BERGER, JJ.

BERGER, Justice:

In this appeal, we consider whether a criminal defendant who decides not to testify may seek review of a trial court's ruling on the admissibility of impeachment evidence. Franklin Fennell, who was being tried on three drug charges, moved to exclude evidence of his prior drug conviction. The trial court denied his motion and, as a result, Fennell decided not to testify. Fennell now challenges the trial court's evidentiary ruling, among other issues raised on appeal.

We hold that, in all future criminal proceedings, "to raise and preserve for review the claim of improper impeachment with a prior conviction, a defendant must testify." [1] Since the rule we announce here operates prospectively, we have fully considered Fennell's claim of error. We find no error in the trial court's decision not to exclude evidence of Fennell's prior conviction. We also find no merit to Fennell's other arguments: (i) that the trial court abused its discretion in refusing a requested continuance; and (ii) that there was insufficient evidence to support the guilty verdicts. Accordingly, the judgment of the Superior Court will be affirmed.

## I. FACTS AND PROCEDURAL BACKGROUND

Fennell was arrested following a drug buy initiated by an undercover police officer. On the evening of March 1, 1994, Detective Diane Moss and a confidential informant went to the Claridge Court Apartments in New Castle County to purchase cocaine. The informant knew Fennell, who was standing in the apartment parking lot, and the three started talking. Moss told Fennell that she wanted to purchase $50 worth of cocaine, but Fennell did not respond.

A few minutes later, a man drove a black automobile into the parking lot and stopped near Fennell. The driver, later identified as codefendant Kello Wells, got out of the car and approached Fennell. After Fennell and Wells exchanged greetings, Fennell turned to Moss and asked what Moss wanted. Moss answered that she wanted "a fifty." Moss repeated to Wells that "they want a fifty." Without further conversation, Wells walked to a Mercedes that was owned by Fennell and parked in the lot. Wells opened the driver's side door, bent over behind the opened car door, and returned less than a minute later with three plastic bags containing cocaine. Moss paid for the drugs and left the area.

## II. EVIDENCE OF FENNELL'S PRIOR CONVICTION

■ Fennell was charged with delivery of cocaine, use of a vehicle for keeping controlled substances, and second degree conspiracy. He had been convicted of delivery of cocaine six years earlier, and Fennell filed a motion in limine to prohibit the State from introducing evidence of his prior conviction. Fennell argued that the probative value of the evidence would be far outweighed by its prejudicial effect. He also advised the trial court that its ruling would be critical to his decision whether to testify on his own behalf. The trial court denied Fennell's motion and Fennell did not testify.

By choosing not to testify, Fennell precluded meaningful review of the trial court's impeachment ruling. This Court has no testimony to evaluate and no way of knowing whether the trial court would have modified its ruling in light of the evidence presented. Indeed, based upon the turn of events at trial, the State might have decided not to use the prior conviction as impeachment evidence. These and other, similar concerns

---

1. *Luce v. United States,* 469 U.S. 38, 43, 105 S.Ct. 460, 464, 83 L.Ed.2d 443 (1984).

were identified by the United States Supreme Court in its decision to deny appellate review to defendants in Fennell's circumstances:

A reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context. This is particularly true under Rule 609(a)(1), which directs the court to weigh the probative value of a prior conviction against the prejudicial effect to the defendant. To perform this balancing, the court must know the precise nature of the defendant's testimony, which is unknowable when, as here, the defendant does not testify.

Any possible harm flowing from ... [the] in limine ruling is wholly speculative. The ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in defendant's proffer.

\*     \*     \*     \*     \*     \*

When the defendant does not testify, the reviewing court also has no way of knowing whether the Government would have sought to impeach with the prior conviction. If, for example, the Government's case is strong, and the defendant is subject to impeachment by other means, a prosecutor might elect not to use an arguably inadmissible prior conviction.

\*     \*     \*     \*     \*     \*

Even if these difficulties could be surmounted, the reviewing court would still face the question of harmless error.... Were in limine rulings under Rule 609(a) reviewable on appeal, almost any error would result in the windfall of automatic reversal; the appellate court could not logically term "harmless" an error that presumptively kept the defendant from testifying.[2]

We find the Supreme Court's reasoning persuasive. We note that even the trial court had difficulty considering Fennell's motion without the benefit of a factual context. The trial judge asked counsel whether he could decide the motion before seeing how the evidence unfolded and without knowing how Fennell would defend against the

charges. He deferred ruling on the motion until the State rested, and still had to consider the probative value of the prior conviction based on assumptions as to how Fennell would testify. If it undertakes appellate review, this Court will be hampered by the same lack of context that troubled the trial court. We conclude that a defendant must testify if he or she wishes to preserve a claim that the trial court erred in allowing impeachment with a prior conviction. Fennell is not restricted by this rule, which operates prospectively. Accordingly, we turn to the merits of his evidentiary argument.

A prior felony conviction may be used to impeach the credibility of a witness if the court determines that "the probative value of admitting [the] evidence outweighs it prejudicial effect...." D.R.E. 609(a)(1). Fennell argues that the trial court did not adequately consider the prejudicial effect of the prior conviction. He contends that, because the prior conviction was for the same offense (delivery of cocaine) and because there is a general "hysteria" about drug crimes, the jury would have concluded that Fennell was guilty of the current charges if it learned about the prior conviction. Fennell also claims that he was severely prejudiced because the trial court's ruling caused him to give up his right to testify. Finally, Fennell suggests that the trial court improperly considered the admissibility of the prior conviction under D.R.E. 404, instead of D.R.E. 609.

We find these arguments to be without merit. The trial court anticipated, based upon Fennell's opening statement and his cross-examination of other witnesses, that Fennell would claim to have been an innocent bystander who was unaware that a drug transaction was taking place. The court reasoned that, if Fennell were to testify along those lines, evidence of his prior drug conviction would be admissible for impeachment purposes. The court expressly found, as required by D.R.E. 609(a)(1), that the probative value of the evidence outweighed its prejudicial effect. Although Fennell says that the court should have given more weight to the impact of his prior conviction, both on

---

**2.** *Luce v. United States,* 469 U.S. at 41–42, 105     S.Ct. at 463–64.

the jury and on his decision not to testify, the trial court acted within its discretion in evaluating the competing interests.[3]

## III.  DENIAL OF CONTINUANCE

■ Fennell argues that the trial court abused its discretion in denying his request for a continuance.  On the morning of trial, Fennell's counsel learned that Fennell has a cousin who is known as "Agua."  Fennell's codefendant, Wells, also uses the street name "Agua."  Fennell asked for a continuance in order to locate his cousin, on the theory that his cousin could impeach Moss's identification of Wells as Agua.

We conclude that the trial court acted well within its discretion in denying Fennell's request for a continuance.  There was no showing that the second Agua could be located or that his presence or testimony would be helpful.  Moss was quite certain about her identification of Wells and Fennell never suggested that his cousin looked like Wells or frequented the Claridge Court Apartments.  In short, there was little likelihood that the missing witness would be helpful to Fennell or that Fennell would be prejudiced by the denial of a continuance.  On the other hand, all court personnel, parties and witnesses were otherwise ready to begin trial and the court noted that this case had been pending for more than a year.  In addition, since the missing potential witness was Fennell's relative, the court suggested that Fennell might be able to locate him while the trial was proceeding.  The trial court considered the relevant factors[4] and its ruling will not be disturbed.

## IV.  SUFFICIENCY OF THE EVIDENCE

■ Finally, Fennell argues that there was insufficient evidence to support the convictions.  A jury's verdict will not be overturned if "any rational trier of fact, viewing the evidence in the light most favorable to the State could find the defendant guilty beyond a reasonable doubt."[5]  Fennell makes much of the fact that he did not directly participate in the drug transaction.  He neither supplied the drugs nor received the cash.  According to Moss, however, Fennell did tell Wells that Moss wanted $50 worth of cocaine.  Wells then went to Fennell's parked Mercedes and returned moments later with the drugs.  A reasonable juror could infer from this evidence that Fennell kept the cocaine in his car; that he instructed Wells to retrieve the drugs and sell them to Moss in an effort to distance himself from the transaction; and that Fennell and Wells were working together as part of a plan to sell drugs.  Accordingly, we find that there was sufficient evidence to support the jury's verdicts.

Based upon the foregoing, the judgment of the Superior Court is affirmed.

---

**3.** *Smith v. State*, Del.Supr., 560 A.2d 1004 (1989).

**4.** *See Secrest v. State*, Del.Supr., 679 A.2d 58, 65 (1996).

**5.** *Robertson v. State*, Del.Supr., 596 A.2d 1345, 1355 (1991).