**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

STATE OF DELAWARE,      )
         )
         )
      v.       )     I.D. No. 1710010993A
         )
RADEE PRINCE,      )
         )
     Defendant.     )

Submitted:  October 20, 2021
Decided: January 24, 2022

*Upon Consideration of Defendant's Motion for Post-Conviction Relief*,
**SUMMARILY DISMISSED**.

**MEMORANDUM OPINION**

Defendant Radee Prince was convicted of attempted manslaughter and related offenses and then sentenced to 40 years at Level V.  This is a ruling on Prince's *pro se* Rule 61 motion.  Finding no merit in the motion, the Court will dismiss it.

**BACKGROUND**[1]

**A.  The Trial**

---

[1] Unless otherwise noted, the Court has drawn the facts surrounding Prince's trial proceedings from the appendix attached to his motion ("Def.'s Ex. [#]") and the larger criminal file compiled during his proceedings.  Where appropriate, the Court will cite to a specific document in the record.

The Delaware Supreme Court provided a succinct summary of the evidence and relevant events, so the Court quotes it in full below. In essence, Prince arrived in Delaware after killing three of his colleagues in Maryland earlier that morning; descended on the unarmed victim without prior warning; shot him non-fatally twice during an unprovoked attack that was captured by video; fled the scene but failed to evade law enforcement; and, at trial, convinced the jury that he did not commit attempted murder because he was suffering from extreme emotional distress while on his rampage:

> [O]n October 18, 2017, Rashan Baul (also known as Jason Baul) was meeting with Cort Hughes at Baul's auto-sales business when Prince entered the building, opened the door to the small office where Baul and Hughes were meeting, and shot Baul.

> A bullet initially struck Baul in the face and lodged in his spine. Prince backed out of the office and stood outside the door, attempting to clear a jam in the gun. Baul struggled on the floor of the office, pushing the desk against the door. Prince then forcefully opened the door and fired again. Prince left the building, but then returned, pushed open the office door again, and fired again. At least one additional shot hit Baul and lodged in his pelvic area. As Baul and Prince struggled near the door to the office, Hughes managed to escape and fled the building. Prince then left the scene, saying "bleed out, bitch." Baul crawled to the door of the building and called for help. As his employees came to his aid, Baul reported that Prince, whom he had known for many years, was the shooter.

> Ebony Wilson, one of Baul's employees, also identified Prince as the shooter. She had known Prince since childhood. On the morning of the shooting, Wilson was walking toward the building after collecting some information from cars on the lot when she saw Prince. They greeted each other by name, and Prince asked her if Baul was inside. She said that she did not know. Prince then entered the building, and Wilson saw him pull out a gun. She ran to warn another employee, and then heard a shot. She and the other employee fled. When Wilson saw a police car approaching, she ran back

2

toward the building and saw Baul lying in the doorway. Emergency personnel transported Baul to the hospital, where he was treated for his injuries and survived, although he required extensive follow-up treatment and suffered long-term effects from his wounds.

Video footage from surveillance cameras located in and around the building also showed Prince arriving on the scene and shooting into the office. Other evidence confirmed that Prince drove from Maryland to Delaware shortly before the shooting, purchased ammunition from a Wal-Mart store, exchanged that ammunition for a different type, and then proceeded to Baul's auto lot.

Prince did not contend at trial that he was not the shooter. Rather, his defense was that he had learned that Baul had hired someone to kill him, and that he therefore shot Baul in self-defense or under extreme emotional distress. The defense centered on evidence of a build-up of tension between Prince and Baul, beginning around the time that Baul testified in a criminal trial against Prince's brother, Aaron Bruton, who was also Baul's best friend. Prince testified that he had called Baul a rat, and that Baul had then hired some people to assault him outside of a nightclub, as a result of which Prince had a broken back and a severe laceration to his forehead, and was placed in a medically induced coma.

Prince and Baul also testified about an incident that occurred in January 2016, after Bruton was released from prison. Bruton, Baul, and Prince were at the home of Prince's father, and Baul and Prince got into a fight. The testimony regarding the reason for the fight and what happened next differed somewhat, but it is clear that at some point Baul and Prince left the house and Baul drove a truck into Prince. Baul was going to testify in a criminal case against Prince in connection with that incident, but the case was ultimately dismissed.

Prince, his sister, his niece, and a family friend also testified that in May 2016, as Baul and Prince were leaving Prince's father's funeral, Baul took a gun out of the console of his car and aimed it at Prince's face. Baul denied having a gun at the funeral.

Prince further testified that in 2016 he heard that Baul had offered $10,000 to have Prince killed. Prince said that he moved to Elkton, Maryland, so that Baul would not know where to find him. He testified that on the Saturday before the shooting, he saw someone who knew Baul standing outside a neighbor's house and became fearful that Baul would learn where he lived. He

3

therefore decided to go to Baul's business to talk to him, but said that when he walked into the office, Baul reached toward his pocket—Prince believed to reach for a gun—and Prince opened fire.

To rebut Prince's position that his past interactions with Baul supported a finding of self-defense or extreme emotional distress, the State sought to introduce evidence that on the morning of October 18, 2017, before going to Baul's business, Prince shot and killed three people and injured others at his workplace in Edgewood, Maryland. The State argued that Prince had put his state of mind at issue, and that the probative value of the evidence of the Maryland shooting was sufficient to overcome its prejudicial nature. The Superior Court weighed the highly prejudicial nature of the evidence against its conclusion that the evidence was also highly probative of Prince's state of mind, and held that the evidence was admissible under D.R.E. 403. The court also then performed an analysis under D.R.E. 404(b) and *Getz v. State* and ruled that the evidence was admissible under that analysis as well.

The State then questioned Prince about the Maryland shooting. Prince asserted his Fifth Amendment privilege. After the defense rested, the State introduced evidence of the Maryland shooting, including a video of the incident; the ensuing manhunt; and Prince's arrest later that evening in Newark, Delaware, by agents of the federal Bureau of Alcohol, Tobacco, and Firearms ("ATF"), which involved a brief foot chase during which Prince discarded a gun.

Several key instructions were given to the jury. First, the jury received an instruction on self-defense as to the attempted murder charge against Prince. Second, the court instructed the jury on the lesser-included offense of attempted manslaughter under extreme emotional distress. Finally, the court instructed the jury that it could use the evidence of the Maryland shooting only for the purpose of determining Prince's state of mind as to the Baul shooting, and not for any other purpose.

The jury found Prince not guilty of Attempted Murder and guilty of the lesser-included offense of Attempted Manslaughter Under Extreme Emotional Distress. The jury also found Prince guilty of Reckless Endangering First Degree, Carrying a Concealed Deadly Weapon, Resisting Arrest, and two counts of Possession of a Firearm During the Commission of a Felony.[2]

---

[2] *Prince v. State,* 2019 WL 3383880, at *1–2 (Del. July 25, 2019) (citations omitted).

## B. The Direct Appeal

Prince raised no less than 11 separate issues in his *pro se* direct appeal. The Supreme Court dealt with each of them in affirming his convictions and sentence.[3] One might have thought Prince's appellate barrage exhausted the landscape of possible issues to complain about, but that assumption would underestimate Prince. Even so, much of his Rule 61 motion is simply a rehash of claims that were considered and rejected on direct appeal. Accordingly, we will limit our substantive discussion of his myriad claims to those that were not explicitly raised until now.

## C. This Motion

Prince is *pro se*, as he was on direct appeal. His handwritten pleadings lack the articulation of a skilled legal practitioner and so surmising his complaints carry with it the risk of poor communication. Against that background, the Court perceives the following to be the most salient of Prince's allegations.

First, Prince alleges prosecutorial misconduct. The primary argument is that the State withheld information concerning criminal charges against its ballistics expert, Carl Rone, who pled guilty to falsifying his employee time sheets. Subsidiary arguments are leveled at the individual prosecutor who, according to Prince, withheld what he knew about Baul's plot to kill him.

---

[3] *See generally id.* at *3–13.

Second, Prince claims that his attorney was ineffective in six ways: (1) failing to object to Rone's testimony; (2) failing to object to the State's comments about the Maryland crime video; (3) providing Prince with an "edited" version of the Delaware crime video; (4) asserting the insanity defense without Prince's permission; (5) failing to object to discussion of prior, dismissed charges that involved the victim and Prince; and (6) failing to object to the State's sentencing memorandum, which, Prince claims, contained unreliable or false information.

Third, Prince alleges trial court errors. In this category, the complaints are that the Court denied him his right to present witnesses and wrongly required him to testify before presenting additional witnesses. Prince also uses this category to repeat his belief that the Court incorrectly admitted evidence of the Maryland shootings.

Finally, there is a category called "cumulative errors." This category presupposes the existence of errors.[4] The Court, however, does not find any and so rejects this claim and all the others for the reasons discussed below.

## ANALYSIS

A Rule 61 analysis proceeds in two steps. First, the Court must determine whether the motion clears Rule 61's procedural bars.[5] If so, the Court next reviews

---

[4] *See, e.g.*, *Starling v. State*, 130 A.3d 316, 336 (Del. 2015).
[5] *E.g.*, *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

the motion's merits on a claim-by-claim basis.[6]  Some of Prince's claims are procedurally barred.  The rest of them fail on the merits.

## A.  The Prosecutorial Misconduct and Trial Court Error Claims Are Barred.

Rule 61 is nothing "other than a procedural device" for transmitting post-conviction claims.[7]  By consequence, there are procedural "limitations on . . . postconviction relief."[8]  Rule 61 contains four procedural bars that, if applicable, preclude review of all or part of the defendant's motion.[9]  Two of those bars are applicable here: procedural default[10] and prior adjudication.[11]

Under Rule 61(i)(4), claims resolved on direct appeal cannot be relitigated on collateral attack.  Here, Prince argued to the Supreme Court that evidence of the Maryland triple homicide should not have been admitted.  The Supreme Court disagreed and affirmed the Court's admission of that evidence.  Accordingly, this claim is barred and dismissed.

Under Rule 61(i)(3), claims that could have been raised on direct appeal, but were not, are barred as procedurally defaulted.  Prosecutorial misconduct claims can

---

[6] *E.g.*, *State v. Reyes*, 155 A.3d 331, 342 n.15 (Del. 2017).
[7] *Bailey v. State*, 588 A.2d 1121, 1125 (Del. 1991).
[8] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013).
[9] Del. Super. Ct. Crim. R. 61(i)(1)–(4); *State v. Wright*, 67 A.3d 319, 323 (Del. 2013).
[10] Del. Super. Ct. Crim. R. 61(i)(3).
[11] *Id.* R. 61(i)(4).

be raised on direct appeal.[12]  Claims challenging a trial court's procedural and evidentiary decisions can too.[13]  Prince, however, failed to raise his present claims. Accordingly, Prince's instant allegations of prosecutorial misconduct and procedural or evidentiary errors made by the Court are barred and dismissed.[14]

True, Rule 61 will excuse Prince's procedurally defaulted claims if he shows (1) cause for failure to raise the claim on direct appeal; and (2) prejudice from that failure.[15]  But he has shown neither.

As to cause, Prince does not explain why he waited until now to bring his remaining misconduct and trial error claims.  Indeed, Prince knew how to raise these claims: He raised, for example, many claims of trial court error on appeal.[16]  Without specific allegations of cause, the procedural default exception is unavailable.[17]

Prince has also failed to show prejudice.  To see why, consider the prosecutorial misconduct claim regarding the ballistics expert.  Rone did not testify at trial.  And Prince admitted throughout trial that he shot Baul, albeit with

---

[12] *E.g.*, *Heald v. State*, 251 A.3d 643, 652 (Del. 2021); *Ayers v. State*, 251 A.3d 637, 641 (Del. 2021); *Saavedra v. State*, 225 A.3d 364, 372–73 (Del. 2020).

[13] *E.g.*, *Allen v. State*, 2021 WL 3012892, at *3–7 (Del. July 16, 2021); *Fennell v. State*, 691 A.2d 624, 625–27 (Del. 1997).

[14] *E.g.*, *Schellinger v. State*, 2005 WL 1653621, at *2 (Del. July 12, 2005); *Mason v. State*, 1999 WL 93283, at *2 (Del. Feb. 11, 1999).

[15] *See* Del. Super. Ct. Crim. R. 61(i)(3)(A)–(B).  There are additional exceptions for actual innocence, retroactive constitutional rulings, and jurisdictional issues.  *See id.* R. 61(d)(2), (i)(5).  But none is available here and Prince does not contend otherwise.

[16] *See Prince*, 2019 WL 3383880, at *3–9.

[17] *See, e.g.*, *Bohan v. State*, 2012 WL 2226608, at *2 (Del. June 15, 2012).

justification. Taken together, it is unclear why a chance to impugn Rone's analysis would have tended to show Prince was not guilty. Accordingly, Prince's claims regarding withholding of impeachment evidence are, at best, collateral and therefore irrelevant to overturning his conviction on these facts.[18]

In sum, Prince's prosecutorial misconduct and trial court error claims are procedurally barred. The Court now turns to his ineffective assistance claims.

## B. The Ineffective Assistance Claims Fail on the Merits.

As an initial matter, Prince's ineffective assistance claims are not procedurally barred because his motion is timely and not successive and his ineffective assistance claims could not have been raised or resolved on direct appeal.[19] Nevertheless, Prince's allegations fail to state a claim for post-conviction relief.

---

[18] *See, e.g.*, *Hicks v. State*, 913 A.2d 1189, 1195–96 (Del. 2006) (explaining that defense's failure to introduce "mere" impeachment evidence does not warrant new trial because such evidence would not create a substantive issue material to the defendant's guilt); *accord Purnell v. State*, 254 A.3d 1053, 1098–99 (Del. 2021); *see also State v. Owens*, 2021 WL 6058520, at *15 (Del. Super. Ct. Dec. 21, 2021).

[19] *See, e.g.*, *Green v. State*, 238 A.3d 160, 175 (Del. 2020) ("Simply put, ineffective-assistance claims are not subject to Rule 61(i)(3)'s bar because they cannot be asserted in the proceedings leading to the judgment of conviction under the Superior Court's rules and this Court's precedent. Put yet another way, the failure to assert an ineffective-assistance-of-counsel claim in the proceedings leading to the judgment of conviction is not a procedural default." (footnote omitted)); *see also Duross v. State*, 494 A.2d 1265, 1269 (Del. 1985) (observing that motions for post-conviction relief afford "proper review" of ineffective assistance claims); *see generally Guy v. State*, 82 A.3d 710, 715 (Del. 2013) ("[I]n a jurisdiction like Delaware, where ineffective assistance of trial counsel may not be raised on direct appeal, the first post-conviction proceeding is in many ways the equivalent of a prisoner's direct appeal as to the ineffective [] assistance claim." (internal quotation marks omitted)).

9

Defendants have a right to effective assistance of counsel.[20] But simply calling counsel's representation ineffective does not make it so. To demonstrate ineffective assistance, a defendant must show "first, that his counsel's representation fell below an objective standard of reasonableness and, second, that the deficiencies in counsel's representation caused him substantial prejudice."[21] This is a "heavy burden."[22] "Mere allegations of ineffectiveness will not suffice."[23] A finding of ineffective assistance must be "compelled" by the record.[24] To be ineffective, counsel's assistance must "so undermine[] the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."[25]

The standards governing deficient performance and substantial prejudice are "well-worn."[26] To satisfy the deficient performance prong, the defendant must establish that "no reasonable lawyer would have conducted the defense as his lawyer did."[27] In evaluating counsel's performance, the Court focuses on counsel's

---

[20] *E.g.*, *Reed v. State*, 258 A.3d 807, 821 (Del. 2021).
[21] *Green*, 238 A.3d at 174 (citing *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984)).
[22] *Id.*; *accord Swan v. State*, 248 A.3d 839, 859 (Del. 2021).
[23] *Wright v. State*, 671 A.2d 1353, 1356 (Del. 1996).
[24] *Swan*, 248 A.3d at 859 (internal quotation marks omitted).
[25] *Strickland*, 466 U.S. at 686; *accord Shockley v. State*, 565 A.2d 1373, 1376 (Del. 1989).
[26] *Ploof*, 75 A.3d at 820.
[27] *Green*, 238 A.3d at 174 (internal quotation marks omitted).

10

decisions, not the results of those decisions.[28] The outcomes of otherwise reasonable

trial strategies and professional judgments are "virtually unchallengeable."[29]

Deficient performance alone will not invalidate a conviction.[30] The defendant

also must show substantial prejudice: "a reasonable probability that, but for

counsel's professional errors, the result of the proceeding would have been

different."[31] "A reasonable probability means a probability sufficient to undermine

confidence in the outcome . . . ."[32] And "[t]he likelihood of a different result must

be substantial[,] not just conceivable."[33] Failure to state prejudice with particularity

---

[28] *E.g.*, *Neal v. State*, 80 A.3d 935, 942 (Del. 2013) ("Because it is all too easy for a court examining counsel's defense after it has proved unsuccessful to succumb to the distorting effects of hindsight, counsel's *actions* are afforded a strong presumption of reasonableness." (emphasis added) (alteration and internal quotation marks omitted)); *see also Burns v. State*, 76 A.3d 780, 788 (Del. 2013) ("[E]ven evidence of isolated poor strategy, inexperience, or bad tactics does not necessarily amount to ineffective assistance of counsel." (alterations and internal quotation marks omitted)).

[29] *Swan*, 248 A.3d at 859 (internal quotation marks omitted).

[30] *E.g.*, *Albury v. State*, 551 A.2d 53, 60 (Del. 1988) ("[I]neffectiveness claims alleging a deficiency in . . . performance are subject to a general requirement that the defendant *affirmatively prove prejudice*." (internal quotation marks omitted)).

[31] *Swan*, 248 A.3d at 859 (internal quotation marks omitted).

[32] *Green*, 238 A.3d at 174 (internal quotation marks omitted).

[33] *Swan*, 248 A.3d at 859 (internal quotation marks omitted).

is "fatal."[34] "[T]here is no need to analyze whether an attorney performed deficiently if the alleged deficiency did not prejudice the movant."[35]

In reviewing an ineffective assistance claim, the Court "must remain cognizant that trial counsel's performance, *viewed as a whole*, is what matters."[36] So before assessing each of Prince's claims, a few words about the "real world" appear in order. It is difficult to call the jury's verdict in this matter anything less than a defense success. The jury saw video of Prince gunning down three co-workers in Maryland before coming to Delaware. Then it saw video of him entering an auto shop, walking up to a man against whom he had a grudge and shooting him multiple times. And when his pistol jammed, he resolutely fixed it and went back and fired more shots. The Delaware victim's survival is remarkable. The videotape was graphic. The charge of attempted murder was well supported by the evidence.

Despite this evidence, Prince managed to secure a verdict of attempted manslaughter by convincing the jury he acted out of extreme emotional distress. The only lesser culpability that could conceivably have been found was an acquittal based on self-defense. Such a justification, however, was unavailable on these facts.

---

[34] *Purnell v. State*, 106 A.3d 337, 342 (Del. 2014) (internal quotation marks omitted); *Dawson v. State*, 673 A.2d 1186, 1196 (Del. 1996) ("[F]or a claim of ineffective assistance of counsel to prevail, the defendant must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal.").

[35] *Ruffin v. State*, 2019 WL 719038, at *2 (Del. Feb. 19, 2019).

[36] *Green*, 238 A.3d at 174 (alteration and internal quotation marks omitted).

Prince failed to offer any evidence sufficient to support a finding that the use of deadly force upon the victim was necessary "on the present occasion"[37] or that deadly force would have been unavoidable that day even if Prince did not come to Delaware in the first place.[38] Nor could he. All the evidence was to the contrary.

In this real world, it is difficult to understand what Prince is seeking. He got the best verdict he could have possibly hoped for but still wants a new trial. While it is not for the Court to question motives, the verdict is a backdrop against which Prince's claims of prejudice will ring especially hollow.

### 1. The Claim Regarding the Ballistics Evidence Fails.[39]

---

[37] *See* 11 *Del. C.* § 464(a) (2020).

[38] *See id.* § 464(e)(2) (providing that use of deadly force is not justified if actor can avoid using it by retreating).

[39] Arguably, this claim duplicates the prosecutorial misconduct claim that was found procedurally barred earlier. Defendants cannot repackage in the language of ineffective assistance claims that otherwise would be barred by Rule 61(i). *E.g.*, *Skinner v. State*, 607 A.2d 1170, 1172 (Del. 1992) ("[A] defendant is not entitled to have a court re-examine an issue that has been previously resolved simply because the claim is refined or restated." (internal quotation marks omitted)); *see Owens*, 2021 WL 6058520, at *12 n.108; *State v. Dunnell*, 2021 WL 1716647, at *9 (Del. Super. Ct. Apr. 30, 2021); *State v. Barksdale*, 2020 WL 2096148, at *4 (Del. Super. Ct. Apr. 30, 2020). A court therefore could find this claim defaulted under Rule 61(i)(3). *Cf. Green*, 238 A.3d at 176 ("There are times . . . when our prior rejection of a substantive appellate claim will render a follow-on ineffective [] assistance claim futile. For instance, if on direct appeal we were to reject a claim that the trier of fact considered inadmissible evidence, a claim in postconviction relief proceedings that trial counsel was ineffective for not objecting to the evidence would be futile and might rightly be considered formerly adjudicated."). That said, the Court has decided to review this claim for completeness.

13

Prince says his counsel was ineffective for not conducting his own investigation into whether Rone was under indictment for falsifying his time sheets. Had counsel done so, Prince speculates, "there is a strong possibility that [he] could have gotten the gun and the trace evidence thrown out and [Prince] could have been acquitted."[40]

Well, actually, that was not a possibility. Rone did not testify. He prepared the ballistics test that found a match between the firearm the police recovered during Prince's arrest and the bullets at the crime scene. When it was determined that Rone was under indictment and perhaps not the most cooperative witness on the State's list, a second investigator from Rone's unit conducted the same analysis, reached the same conclusion as Rone, and said as much on the witness stand. Impeaching Rone's report on character grounds would have done nothing to impeach the second investigator's report and testimony. By consequence, it is not substantially likely that impeaching Rone on the collateral matter of his loyalty as a state employee would have changed the outcome of the trial.[41] Accordingly, this claim is dismissed.

---

[40] Def.'s R. 61 Mot. at 21.

[41] *See Owens*, 2021 WL 6058520, at *10 ("To chill relitigation of collateral issues, the ineffective assistance standard deems successful a prejudice challenge that undermines confidence in *the* outcome. Generalized speculation that 'an' outcome, such as a collateral fact finding, would have been different but for the error, is insufficient." (alteration and internal quotation marks omitted)); *see also Green*, 238 A.3d at 174 (explaining that a defendant cannot satisfy the prejudice prong by arguing a different result is "conceivable" but for the deficient performance).

In search of a way around dismissal, Prince found a letter from the State filed in a contemporaneous homicide case that discusses Rone's indictment and the State's plan to substitute experts in light of it.[42] Given the State's position in that case, Prince concludes that counsel was ineffective by not making a "chain of custody" argument to "throw out" the weapons evidence which, in his view, changed hands from Rone to his replacement without being properly authenticated.

Prince misses the mark. Establishing a chain of custody is a "lenient burden."[43] The State need only introduce authenticating evidence that dispels the "possibilities of misidentification and adulteration, not absolutely, but as a matter of reasonable probability."[44] Put differently, the link "need not be conclusive. An inconclusive link diminishes the weight of the evidence but does not render it inadmissible."[45] Here, the trial record and the second investigator's testimony establish at least a reasonably probable link between Prince and the evidence adduced. So even if counsel "could have" raised a chain of custody argument, that argument would have affected weight, not admissibility, and so would not have

---

[42] Def.'s Ex. 4 (Letter from Matthew Frawley, Deputy Att'y Gen., Del. Dep't of J., to John A. Barber, L. Off. of John Barber, Re: State of Delaware v. Diamonte Taylor (Feb. 20, 2018)).

[43] *White v. State*, 258 A.3d 147, 155 (Del. 2021) (internal quotation marks omitted).

[44] *Tricoche v. State*, 525 A.2d 151, 153 (Del. 1987); *see also Whitfield v. State*, 524 A.2d 13, 16 (Del. 1987) (enumerating factors for analyzing reasonable probability).

[45] *Cabrera v. State*, 840 A.2d 1256, 1265 (Del. 2004) (citation omitted), *overruled on other grounds by Rauf v. State*, 145 A.3d 430 (Del. 2016).

gotten the gun "thrown out." Counsel cannot be found ineffective for failing to make futile arguments.[46] Accordingly, this Claim fails.

## 2. The Claim Regarding the State's Summation Fails.

Prince next argues that trial counsel should have objected to what he believes was a prejudicial comment made by the prosecutor. The record shows that the prosecutor in summation discussed Prince's state of mind and said this about Prince's behavior before coming to Delaware and shooting Baul: "He huddled people together in a workplace in Edgewood, Maryland, and murdered three of them and shot two others."[47] One might have supposed Prince would argue that this statement was not true. Instead, he argues the jury only saw the video of him *shooting* five people and did not hear evidence that any of them were *dead*.[48]

---

[46] *See, e.g.*, *McNair v. State*, 2021 WL 2029195, at *1 (Del. May 18, 2021); *Mays v. State*, 2007 WL 1192072, at *1 (Del. Apr. 24, 2007); *Flamer v. State*, 585 A.2d 736, 755 (Del. 1990); *State v. Colburn*, 2016 WL 3248222, at *4 (Del. Super. Ct. June 1, 2016); *State v. Whitehurst*, 2016 WL 1424502, at *11 (Del. Super. Ct. Mar. 31, 2016); *State v. Rowley*, 2014 WL 595241, at *3 (Del. Super. Ct. Jan. 13, 2014); *State v. Robinson*, 2012 WL 1415645, at *2 (Del. Super. Ct. Jan. 31, 2012); *see also State v. Hammond*, 2011 WL 4638778, at *3 (Del. Super. Ct. Sept. 27, 2011) ("There is no requirement, anywhere, that a defense attorney must discuss futile claims with a client."); *State v. Manley*, 1996 WL 527322, at *6 (Del. Super. Ct. Aug. 1, 1996) ("'[T]he defense bar . . . [is] not obligated to make futile arguments on behalf of . . . clients.'" (quoting *United States v. Zafiro*, 945 F.2d 881, 886 (7th Cir. 1991), *aff'd*, 506 U.S. 534 (1993))).
[47] Def.'s Ex. 21 at 272 (Trial Tr.).
[48] Def.'s Rule 61 Mot. at 22.

Exactly what the marginal prejudice is between evidence that Prince went to his workplace and shot five coworkers and evidence that he went to his workplace and shot five coworkers, three of whom died, is a bit abstract.

Moreover, it is at least somewhat ironic that the very evidence that could have been viewed as overly prejudicial to Prince—*i.e.*, him shooting people in Maryland before events leading to his Delaware murder trial—may actually have helped convince the jury find that he was operating under some severe emotional distress, thus giving the jury a basis to agree upon a verdict of attempted manslaughter instead of attempted murder. Maybe this evidence was not so prejudicial after all.[49]

Assuming the prosecutor told the jury what he knew to be true (that three people died in the Maryland shooting) but the jury did not, the issue becomes whether trial counsel's failure to object to the State's comments constitutes "prejudice" within the meaning of *Strickland*. The *Strickland* prejudice standard sets a high bar forgiving of most mistakes.[50] It is not met by playing Monday-morning

---

[49] *See Prince*, 2019 WL 3383880, at *6 n.30 ("Despite the admission of the [Maryland] evidence, the jury *accepted* the claim that Prince was suffering from extreme emotional distress and found him guilty of the lesser-included offense of attempted manslaughter under extreme emotional distress. It therefore appears that Prince actually incurred no harm from the evidence.").

[50] Indeed, criminal law scholars have documented decisions in which prejudice was not found even though, at trial, defense counsel was high, drunk, mentally ill, asleep, or materially unknowable about or unprepared for the case. *E.g.*, Jeffrey L. Kirchmeier, *Drink, Drugs, and Drowsiness: The Constitutional Right to Effective Assistance of Counsel and the* Strickland *Prejudice Requirement*, 75 Neb. L. Rev. 425, 455–63 (1996) (collecting cases); *see* Marc L. Miller, *Wise Masters*, 51 Stan.

quarterback to counsel's trial decisions. Instead, the defendant must show with particularity how counsel's failure was so prejudicial as to "undermine confidence in the outcome" of the trial.[51] "Although not insurmountable," this requirement is "highly demanding."[52] Prince cannot meet it.

In a different case, with different facts, Prince may have a point. But here, both the Maryland shootings and the Delaware shooting were caught on camera. There is no question but that they happened and that he was the actor in both. Whether Prince killed three people in Maryland or merely shot them cannot have impacted the verdict negatively. To the contrary, the jury saw the Maryland video and still concluded that Prince was acting under extreme emotional distress—a conclusion that undermined the attempted murder charge. Accordingly, the Court

---

L. Rev. 1751, 1786–87 (1999) ("[A] lawyer with a pulse will be deemed effective . . . . [A] lawyer need not be awake, sober, prepared, knowledge, or sensible, at least in the large number of cases where courts find no prejudice." (citations omitted) (collecting authority)); *cf.* Sharon G. Scudder, *With Friends Like You, Who Needs a Jury? A Response to the Legitimization of Conceding a Client's Guilt*, 29 Campbell L. Rev. 137, 138 (2006) ("[T]he concession of a defendant's guilt by his own attorney without express consent is not presumed to be prejudicial to the defendant . . . ." (citing *Florida v. Nixon*, 543 U.S. 175 (2004))); *see generally* Stephanos Bibas, *Incompetent Plea Bargaining and Extrajudicial Reforms*, 126 Harv. L. Rev. 150, 163 (2012) ("Strickland's prejudice requirement . . . excuse[s] even gross deficiencies so long as they did not affect the outcome.").

[51] *Green*, 238 A.3d at 174 (internal quotation marks omitted). *See also Hoskins v. State*, 102 A.3d 724, 730 (Del. 2014) ("[T]he defendant must show that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the Sixth Amendment." (internal quotation marks omitted)).

[52] *Bradley v. State*, 135 A.3d 748, 760 (Del. 2016).

18

cannot find prejudice in counsel's failure to object to the prosecutor's closing statements.

### 3. The Claim Regarding the "Edited" Shooting Footage Fails.

Prince's third allegation is that when he elected to represent himself on appeal, his trial counsel gave him a copy of the auto shop video that shows four shots being fired, even though the trial evidence video showed only three shots being fired. Because of that, he argues the trial evidence video was altered somehow and counsel was ineffective for failing to object.

This argument is so lost in the record it is difficult to be found. Prince never claims he was not the person who shot Baul. And he never claims the video was completely fabricated. Instead, he insists that one of the two videos (either the one shown in court or the one given to his attorney) is edited. Even so, he does not explain why any editing was a problem. We could spend valuable time[53] and effort sorting through the alleged "editing" and even more figuring out which one is "different" from reality, but then where would we be? Prince fired three or four bullets. There is no volume discount or volume premium. The Court will not further entertain the claim without a well-articulated claim of resulting prejudice. Prince offers none and none exists. Accordingly, this Claim fails.

---

[53] The Court has reviewed the video of the crime supplied to Prince by his attorney and notes that there is a seven second "stutter" in the camera as it records the shooting. That is, it stops at 10:48:27, freezes and then resumes at 10:48:35.

### 4. The Claim Regarding the Insanity Defense Fails.

Prince next claims that his trial attorney ineffectively notified the Court that Prince would be asserting an insanity defense without obtaining his consent first.

Rule 12.2 of the Delaware Rules of Criminal Procedure requires the defense to provide the State with written notice whenever it intends to assert an insanity defense. Such notice must be filed "within the time provided for the filing of pretrial motions."[54] The time limit for filing pretrial motions is 10 days following the first case review.[55] If an insanity defense is a possibility, a reasonably competent defense attorney would file the notice of insanity defense to preserve for the defendant the availability of the defense without the risk that the Court might foreclose the possibility due to a default in timing under the rules.

Once again, the details of who said what to whom and when would be important if, in fact, the defense asserted an insanity defense at trial against Prince's wishes.[56] But here, it did not. Indeed, trial counsel explained at the close of the suppression hearing that he was not pressing an insanity defense because it did not

---

[54] Del. Super. Ct. Crim. R. 12.2(a).

[55] *Superior Court of New Castle County Criminal Case Management Plan* § C, Del. Super. Ct., https://courts.delaware.gov/superior/pdf/ccmp.pdf (last updated Mar. 2, 2000).

[56] *E.g.*, *Cooke v. State*, 977 A.2d 803, 842–43 (Del. 2009) (holding that the choice to raise a defense based on the defendant's mental health lies with the defendant alone and that counsel is ineffective when counsel overrides a "competent" defendant's decision not to pursue a verdict or defense based on mental health status); *accord Taylor v. State*, 213 A.3d 560, 567–69 (Del. 2019).

appear supported by the psychiatric reports he had reviewed.[57]  Thus, Prince's complaint does not go to the trial, much less its results, but rather to a pretrial pleading—an ultimately withdrawn notice of insanity defense.  That makes the issue, at best, irrelevant, and so incapable of raising prejudice within the meaning of *Strickland*.[58]  As trial counsel explained, an insanity defense would not work given the psychiatric reports he had before him and due to Prince's rejection of a guilty but mentally ill strategy on the ground that it would not result in a sentence reduction.[59]

Because, as explained earlier, self-defense was not available, the one route that might have saved Prince some jail time was extreme emotional distress, which would (and did) reduce the attempted murder charge to attempted manslaughter.[60] This route was not paved with ineffective assistance.  To the contrary, it was the most logical path the defense could take.  After considering many possible strategies,

---

[57] Def.'s Ex. 26 at 3–4 (Suppression Hr'g Tr.).

[58] *See, e.g.*, *Strickland*, 466 U.S. at 687 ("[T]he defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."); *see also Owens*, 2021 WL 6058520, at *10 ("Calibrated to screen for the wrongfully convicted, Rule 61 should not be used to launch *post hoc* strikes on issues inessential to a judgment of guilt.").

[59] Def.'s Ex. 26 at 4 (Suppression Hr'g Tr.).  *See also Shockley*, 565 A.2d at 1376 ("In examining the reasonableness of counsel's action, [courts] cannot disregard the client's conduct because a client's statements or actions may substantially influence counsel's choices.").

[60] *Compare* 11 *Del. C.* § 641, *with* 11 *Del. C.* §§ 531, 632, 636.

Prince agrees that this was the option chosen by both him and his counsel. Frankly, it stands as one of the very few smart choices Prince made during this whole ordeal.

And since we have returned to self-defense, at least momentarily, now is as good a time as any to marvel at how Prince continues to adhere to his belief that his completely wanton acts were justified because the victim had previously beaten him up, tried to run over him with a car and put out a contract on his life, all of which he says he could prove if given a better chance. In other words, he says it was acceptable to shoot Baul because he was merely launching a preemptive strike against Baul before Baul eventually killed him. In Prince's mind, that may be self-defense, but it is not the law. In fact, it is the exact opposite of the law.[61]

Accordingly, this Claim (and those peripheral to it[62]) fail.

---

[61] *See, e.g.*, 11 *Del. C.* § 464(a) (imposing a present-tense contemporaneity requirement); *Spence v. State*, 129 A.3d 212, 229 (Del. 2015) ("The use of force upon or toward another person is justifiable when the defendant believes that such force is immediately necessary for the purpose of protecting the defendant from the use of unlawful force by the other person *on the present occasion*." (emphasis added) (internal quotation marks omitted)); *Marvel v. State*, 1991 WL 22358, at *3 (Del. Jan. 25, 1991) ("A defendant must present credible evidence that the victim was the aggressor to successfully assert a claim of self-defense."); *see also Tice v. State*, 624 A.2d 399, 401–02 (Del. 1993) ("The character of the victim is not . . . an essential element of a self-defense claim.").

[62] Prince argues in passing that counsel ineffectively conceded his guilt. This claim lacks record support. In any event, to validly assert extreme emotional distress, the defendant must admit that the underlying acts occurred. *Shockley*, 565 A.2d at 1383. So if that is what Prince means by "guilt," then he is not only mistaken, but also cannot argue counsel prejudiced the defense by following the law. *See also Cabrera v. State*, 173 A.3d 1012, 1021 (Del. 2017) (A defendant "cannot shift responsibility to his trial counsel for decisions in which he played a major role.").

**5. The Claim Regarding Past (Dropped) Charges Fails.**[63]

Prince's fifth claim is that, because evidence of *nolle prossed* or dismissed criminal charges were introduced at trial, the Court abused its discretion in admitting them (or trial counsel was ineffective for failing to object to their admission).

Prince provides no record support for this complaint, making review difficult, but it is certainly true that the jury heard that he and Baul did not care for each other and that there had been several instances of bad acts between them, some of which resulted in criminal charges. Some of those charges were indeed *nolle prossed*. But that does not mean the events underpinning the charges did not happen. It just means that the State declined to prosecute them to resolution. For that reason, Prince is incorrect when says he was "exonerated" of any wrongdoing in these prior incidents.[64] He may not have been prosecuted, or the charges may have been dismissed for some reason, but neither result is an exoneration.[65] So there was nothing inappropriate about introducing them.

---

[63] This claim seems to be a repackaged claim of trial court error and so a reviewing court reasonably could find it barred under Rule 61(i)(3). *See supra* note 39.

[64] Def.'s R. 61 Mot. at 25.

[65] *E.g.*, *Winston v. State*, 1993 WL 22014, at *3 (Del. Jan. 11, 1993) ("A *nolle prosequi* is merely a decision by the Attorney General not to prosecute a particular charge . . . . [T]he State's decision not to pursue the [r]obbery charge is not dispositive of the existence of probable cause to issue the search warrant."); *accord Rossi v. State*, 140 A.3d 1115, 1121 n.28 (Del. 2014); *see also Thornton v. State*, 1998 WL 309837, at *1 (Del. June 3, 1998) ("The State is not prohibited from reindicting and prosecuting a defendant for the same offense where a *nolle prosequi* has been entered on those charges . . . . The [past] *nolle prosequi* is not *Brady* [*v.*

23

Finally, it is again ironic that Prince is complaining about evidence of the ill will between the parties while he maintains that the shooting was justified because of the ill will between the parties. While the argument is at least puzzling, perhaps for now it is enough to say that trial counsel was certainly not ineffective for failing to criticize the very evidence that tended to support Prince's defense.

Counsel performed reasonably and Prince suffered no prejudice. Accordingly, this Claim fails.

### 6. The Claim Regarding the State's Sentencing Memorandum Fails.

In one more (and thankfully, final) complaint, Prince attacks the State's sentencing memorandum. He says that it contains false or misleading information. The allegedly fraudulent information is the State's timeline, which suggested that Prince had other victims in mind on the date of the shooting, and referenced his possession of a gun in 2015 when he was stopped by Maryland police—a charge he says he was never convicted on.

As to the 2015 gun charge, the only evidence presented is one of Prince's exhibits.[66] The exhibit is a heavily redacted interview of a Maryland police officer, which references the charge being dropped due to a problem with the basis for the

_____

*Maryland*, 373 U.S. 83 (1963),] material because it would not tend to exculpate [the defendant] regarding his present charges." (citation omitted)). *See* 11 *Del. C.* § 4372 (tacitly distinguishing a conviction from a *nolle prosequi* and a dismissal in providing a mechanism for seeking formal expungement of a conviction).

[66] *See* Def.'s Ex. 31 at 1, 4 (Interview Tr.).

24

stop. Even so, dropping the charge does not speak to whether Prince possessed a firearm in 2015. It therefore does not vitiate the State's point that he possessed a firearm in 2015 either. There was, then, no prejudice caused by counsel's failure to object to that portion of the memorandum.

As to the timeline suggesting Prince visited a former employer in Delaware with evil intent, the Court assigned no weight to it then and sees little reason to give it further credibility now. He may have visited a former employer— the employees certainly thought he did, although they were surely traumatized by his murderous spree at his former workplace in Maryland that morning—and he may not have. Whether it happened or not does not matter.

More important, the State did not emphasize the gun or the purported visit in presenting aggravating factors. Instead, the State argued Prince (1) unduly downplayed the seriousness of the offense; (2) abused the victim in the past; and (3) generally lacked remorse.[67] Regardless of the State's arguments, the Court had considerable discretion in choosing an appropriate sentence and exercised its judgment as prudently as possible. The Court did not sentence Prince based on facts not proven, quite graphically, at trial. Like a defendant's "mitigation report" which sometimes accompanies a sentencing calendar, the State's "sentencing

---

[67] Def.'s Ex. 29 at 2–3 (Letter from Mark A. Denney, Jr., and Erika R. Flaschner, Deputy Att'ys Gen., Del. Dep't of J., to Del. Super. Ct., Re: Sentencing Memo. (June 18, 2018)).

memorandum" is a piece of written advocacy, an effort to persuade the Court to sentence more leniently or harshly. Courts understand this and the hyperbole is always discounted. Prince was sentenced for his conduct on October 18, 2017, and not for any other reason.

## CONCLUSION

The Court has considered each of the claims raised in Prince's Rule 61 motion and has found them to be either procedurally barred or meritless. Accordingly, Prince's motion is **SUMMARILY DISMISSED**.[68]

**IT IS SO ORDERED**.

Charles E. Butler, Resident Judge

---

[68] Del. Super. Ct. Crim. R. 61(d)(5) ("If it plainly appears from the motion for postconviction relief and the record of prior proceedings in the case that the movant is not entitled to relief, the judge may enter an order for its summary dismissal and cause the movant to be notified.").