IN THE SUPREME COURT OF THE STATE OF DELAWARE

KYLE WINGATE, § 
§ No. 473, 2023
Defendant Below, §
Appellant, § Court Below:  Superior Court
§ of the State of Delaware
v. §
§ Cr. ID No. 2003008892
STATE OF DELAWARE, §
§
Appellee. §

Submitted:  September 4, 2024
Decided:    November 4, 2024

Before **SEITZ**, Chief Justice; **VALIHURA**, and **LEGROW**, Justices.

## **ORDER**

Upon consideration of the parties' briefs and the record on appeal, it appears to the Court that:

(1)    After a New Castle County jury found him guilty of his sixth DUI offense, the Superior Court sentenced Kyle Wingate to two years of unsuspended prison time, followed by probation.  He now raises two contentions on appeal.  First, Wingate challenges whether the arresting officers had probable cause to arrest him for DUI.  Second, Wingate argues that the trial court abused its discretion and committed structural error when it deferred its decision on the admissibility of Wingate's 14-year-old forgery conviction until after Wingate testified.  We conclude

that the events leading up to the arrest would lead a reasonable police officer to believe that there was a fair probability that Wingate had driven under the influence of alcohol. Further, this Court previously held that a trial judge may defer a decision under D.R.E. 609 until after the defendant testifies or may reconsider a previous holding under that rule based on the defendant's testimony. We therefore affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

(2) On September 21, 2020, a grand jury indicted Wingate on one count each of Driving a Vehicle While Under the Influence of Alcohol or Any Drug (DUI), Reckless Driving, Leaving the Scene of an Accident, and Driving a Vehicle While License is Suspended or Revoked.[1] Because a conviction in this case would constitute Wingate's sixth DUI offense, the State filed a notice of felony DUI prosecution under 21 *Del. C.* § 4177(d)(6).[2]

(3) In July 2021, Wingate's counsel moved to suppress, arguing that police lacked probable cause to arrest Wingate and that all fruits of the arrest—including the results of the blood test and the statements Wingate made after being taken into custody—therefore should be suppressed.[3] Wingate contended that because the

---

[1] App. to Opening Br. at A10–11.

[2] *Id*. at A12. "For a sixth offense occurring any time after 5 prior offenses, be guilty of a class D felony, be fined not more than $10,000 and imprisoned not less than 4 years nor more than 8 years." 21 *Del. C.* § 4177(d)(6).

[3] App. to Opening Br. at A14–20.

2

officers failed to administer a breath test or field sobriety tests before arresting Wingate, there was insufficient evidence to support finding probable cause when the officers only knew that Wingate had been driving, his vehicle was damaged, he smelled of alcohol, and he admitted to drinking four alcoholic beverages that evening.[4] Wingate primarily relied on this Court's decision in *Lefebvre v. State*,[5] where we held that "a traffic violation combined with an odor of alcohol, standing alone, do not constitute probable cause to arrest the driver for a DUI offense."[6]

(4) In its response, the State argued that this case differed from *Lefebvre*— where the defendant was stopped for failing to use a turn signal—because Wingate's conduct constituted more than a mere traffic violation.[7] The State also pointed out that Wingate admitted to drinking four alcoholic beverages, and this additional factor also supported a probable cause finding.[8]

(5) At the suppression hearing in October 2021, Cpl. Shelton and Trooper Raza testified to the above facts. A month later, the Superior Court denied Wingate's motion to suppress, citing the following factors as supporting probable cause: the officers were responding to multiple reports of erratic driving, Wingate's vehicle

---

[4] *Id.* at A18.

[5] 19 A.3d 287 (Del. 2011).

[6] App. to Opening Br. at A18–19 (quoting *Lefebvre v. State*, 19 A.3d 287, 293 (Del. 2011)).

[7] *Id.* at A26 (citing *State v. Dopirak*, 2017 WL 3129234, at *2 (Del. Super. July 24, 2017)).

[8] *Id.* at A27.

was heavily damaged, Wingate exited out of the driver's side door, the officers smelled an odor of alcohol on Wingate, and Wingate admitted to consuming four alcoholic beverages that evening.[9] The court stated that it did not accord much weight to Wingate's conflicting statements to police about whether he had been driving.[10] The court also concluded that Trooper Raza, the arresting officer, could reasonably rely on Cpl. Shelton's observations of Wingate without conducting his own independent investigation into Wingate's sobriety.[11] Finally, the court concluded that even if the officers lacked probable cause to arrest Wingate for DUI, they possessed probable cause to arrest him for reckless driving under 21 *Del. C.* § 701(b).[12]

(6) Two years later, after numerous delays caused by the COVID-19 pandemic and Wingate's capias, the court held trial. During the pre-trial conference, the State notified defense counsel and the court that it planned to enter a *nolle*

---

[9] Opening Br. Ex. A at 8–9.

[10] *Id*. at 10.

[11] *Id.*

[12] *Id*. (citing 21 *Del. C.* § 701(b) ("Any police officer authorized to arrest without warrant under subsection (a) of this section is further authorized at the scene of a motor vehicle accident, upon reasonable and probable cause to believe, based upon personal investigation which may include information obtained from eyewitnesses, that a violation has been committed by any person then and there present, to arrest such person without a warrant of arrest.")). The State did not raise this argument in its response to Wingate's motion, but the parties addressed the issue in supplemental briefing after oral argument.

4

*prosequi* on all charges except the DUI.[13]  At trial, the State introduced testimony from six witnesses, including Trooper Raza, an eyewitness who called 911 to report Wingate's erratic driving, and the chemists who tested Wingate's blood and reported the results therefrom.  The eyewitness, Jon Steffon, identified Wingate as the driver and sole occupant of the truck.[14]

(7)    After denying Wingate's motion for judgment of acquittal,[15] the court conducted a colloquy with Wingate, who elected to testify.[16]  Outside the jury's presence, defense counsel alerted the court to Wingate's 2009 second-degree forgery conviction and moved to exclude its admission under D.R.E. 609(b) because the conviction was 14 years old.[17]  The State argued that the conviction's probative value substantially outweighed its prejudicial effect, but contended that because Wingate had yet to testify, it was difficult to ascertain how important his credibility would be.[18]  After hearing argument, the court stated that,

> [a]t this point I'm going to rule that its inadmissible. . . At this point, not hearing testimony, though, it's difficult for the [c]ourt to assess the importance of the testimony and centrality of credibility.  So at this point I'm going to rule that its inadmissible.  If for some reason during Mr. Wingate's testimony and during cross-examination the State

---

[13] App. to Opening Br. at A7.

[14] *Id*. at A114–15.

[15] *Id*. at A139–40.

[16] *Id*. at A140–41.

[17] *Id*. at A141.

[18] *Id*. at A141–42.

believes there is something that has caused the [c]ourt to reevaluate those last two prongs, then I will hear it at sidebar before the jury until the [c]ourt rules on it.[19]

Wingate then testified to the following: on the night of his arrest, he received a call from his brother informing him that his father, who was on hospice, would likely die sometime that week.[20] Later, Wingate's "acquaintance" knocked on his door and asked to borrow his truck—although Wingate knew the man, he did not know his name.[21] Because Wingate wanted to help, but had concerns about letting his acquaintance take the truck, he offered to ride along.[22] At trial, Wingate could not recall where his friend wanted to go.[23] Wingate testified that he fell asleep shortly after they began driving, at around 8 p.m., and woke up between 11 p.m. and midnight.[24] Wingate stated that he became frustrated with his friend that they were still driving and requested the payment that his friend had offered to use Wingate's truck.[25] Thereafter the two men got into a physical altercation and the truck began

---

[19] *Id*. at A142.

[20] *Id*.

[21] *Id*. at A142–43.

[22] *Id*. at A142.

[23] *Id*.

[24] *Id*. at A143.

[25] *Id*.

swerving off the road.[26] During the fight, the truck hit a stop sign and could not be driven any further, at which point the acquaintance jumped out and "took off."[27]

(8) While waiting for police to arrive, Wingate noticed a "bag of white substance," and, knowing his acquaintance to be "nefarious," assumed the bag contained cocaine.[28] Wingate testified that he "panicked" and, concerned that police would arrive shortly, ingested the cocaine.[29]

(9) After Wingate's direct examination, the State moved to admit the 2009 forgery conviction under D.R.E. 609, arguing that Wingate's theory of the case was an invention and—if the jury found him credible—it would acquit him of the DUI charge.[30] The court agreed, holding that because Wingate's testimony directly contradicted Steffon's and Trooper Raza's testimony, the forgery conviction's probative value substantially outweighed its prejudicial effect.[31] Defense counsel then asked if the conviction could be sanitized, but did not raise any objections or state that Wingate had testified in reliance on the court's prior indication that the conviction was inadmissible.[32]

---

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.* at A144.

[32] *Id.* at A145.

(10) After deliberations, the jury returned a verdict finding Wingate guilty of driving under the influence of a combination of drugs and alcohol.[33] The Superior Court sentenced Wingate on December 1, 2023, to eight years at Level V incarceration, suspended after 2 years for decreasing levels of probation and on the condition that Wingate complete drug and alcohol treatment programs under 21 *Del. C.* § 4177(d)(9).[34]

## II. ANALYSIS

(11) We review the trial court's denial of a motion to suppress for abuse of discretion.[35] "To the extent the claim of error implicates questions of law, however, our standard of review is *de novo*."[36] A "trial court's decision to admit evidence of prior felony convictions is subject to review in this Court for an abuse of discretion."[37] Where a defendant fails to raise a claim below, we review for plain error.[38] "Under the plain error standard of review, the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[39] Our review "is limited to material defects which are apparent

---

[33] *Id.* at A162.

[34] Opening Br. Ex. C at 1–2 (Sentencing Tr.).

[35] *Rivera v. State*, 7 A.3d 961, 966 (Del. 2010).

[36] *Sierra v. State*, 958 A.2d 825, 828 (Del. 2008).

[37] *Morris v. State*, 795 A.2d 653, 665 (Del. 2002).

[38] *Mills v. State*, 201 A.3d 1163, 1167 (Del. 2019); *Nance v. State*, 903 A.2d 283, 285 (Del. 2006).

[39] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

on the face of the record; which are basic, serious and fundamental in their character, and which clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[40]

(12)   Probable cause to arrest exists where the facts and circumstances within the arresting officers' "knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a [person] of reasonable caution in the belief that an offense has been or is being committed."[41]

(13)   The crux of Wingate's first contention on appeal is that between the time the officers arrived on the scene and when they arrested him, they "learn[ed] nothing negative about his fitness to drive" and, accordingly, lacked probable cause to arrest him for DUI.[42]   Wingate relies on this Court's decisions in *Rybicki v. State*[43] and *Lefebvre v. State*,[44] where we held that "a traffic violation combined with an odor of alcohol, standing alone, do not constitute probable cause to arrest the driver for a DUI offense,"[45] but when combined with "rapid speech, admission to drinking,

---

[40] *Id.*

[41] *Tolson v. State*, 900 A.2d 639, 643 (Del. 2006) (quoting *Draper v. United States,* 358 U.S. 307, 313 (1959)).

[42] Opening Br. at 14.

[43] 119 A.3d 663 (Del. 2015).

[44] 19 A.3d 287 (Del. 2011).

[45] *Id*. at 293.

bloodshot and glassy eyes and a failed alphabet test . . . the probable cause standard has been satisfied."[46]

(14)   Although he concedes that the troopers' failure to administer field sobriety tests and a breathalyzer does not preclude finding probable cause to arrest, Wingate argues that it "limit[s] the finding to the trooper's observation at the scene."[47]   Those observations included: eyewitness reports of erratic driving corroborated by the damage to Wingate's truck and downed traffic sign, the odor of alcohol, and Wingate's admission to consuming four alcoholic drinks.

(15)   Wingate argues that these facts are analogous to *Lefebvre* because here the troopers knew only that Wingate had committed a traffic violation and smelled of alcohol; he contends, without citation, that his admission to drinking four alcoholic beverages "adds nothing to that equation as it provides the same information as the odor of alcohol."[48]   Wingate acknowledges that "each of these factors[] can contribute to probable cause," but he maintains that "they simply do not add up to probable cause in this case."[49]

(16)   Wingate's argument relies on the faulty premise that this case is analogous to the facts in *Lefebvre*.  It is not.  The information obtained from the 911

---

[46] *Rybicki*, 119 A.3d at 671 (Del. 2015) (quoting *Lefebvre*, 19 A.3d 287, 293 (Del. 2011)).

[47] Opening Br. at 11.

[48] *Id*. at 15.

[49] *Id*. at 14.

calls[50] and the observed damage to Wingate's truck elevate his conduct well above the "failure to signal" traffic violation at issue in *Lefebvre*. Moreover, despite Wingate's contentions otherwise, his admission to drinking earlier in the evening provides additional information supporting the officers' belief that he had been driving under the influence. Both the odor of alcohol and Wingate's admission constitute reasonably trustworthy information that would contribute to a reasonable belief that Wingate had been driving under the influence.

(17)   As to Wingate's argument that the Superior Court abused its discretion by deferring its decision about the admissibility of Wingate's prior conviction, we addressed the very issue in *Reyes v. State*,[51] holding that the Superior Court may defer such an evidentiary ruling until after the defendant testifies. This Court explained that,

> [a] trial court has no obligation to rule upon such a motion before the defendant testifies. The trial court may have deferred the motion until the conclusion of Reyes' direct examination, if he did elect to testify. A trial court generally has the option "to defer ruling on evidentiary issues until the evidence is actually offered for admission." "This is particularly true under Rule 609(a)(1), which directs the court to weigh the probative value of a prior conviction against the prejudicial effect to the defendant. To perform this balancing, the court must know the

---

[50] The information in the 911 calls—including that the truck was being driven erratically and on a tire rim—was conveyed to the troopers before Wingate's arrest. App. to Opening Br. at A42 (Suppression Hearing Tr.).

[51] 155 A.3d 331 (Del. 2017).

precise nature of the defendant's testimony, which is unknowable" until he actually testifies.[52]

We went on to explain in *Reyes* that the trial court would have discretion to reconsider a motion *in limine* after hearing a defendant's testimony, holding that "[e]ven if the trial court had granted a motion *in limine* prior to Reyes' testimony, the ruling would have been subject to change as the evidence unfolded."[53]

(18)  Although *Reyes* is directly on point, Wingate did not address it in his opening or reply brief.  Wingate offered no reason for us to revisit *Reyes*, which remains good law.  We therefore affirm the Superior Court's admission of Wingate's forgery conviction.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

*/s/ Abigail M. LeGrow*
Justice

---

[52] *Id.* at 344 (quoting *Dawson v. State*, 581 A.2d 1078, 1087 (Del. 1990); *Fennell v. State*, 691 A.2d 624, 626 (Del. 1997)).

[53] *Id.*

12